## E. F. CUTLER v. BOARD OF SUPERVISORS OF MADISON COUNTY.

MUNICIPAL BONDS.   *Variance from authorizing statute as to interest.   Curative statute.   Bonâ fide holder.*

Where the Legislature of this State, by statute, authorizes the election required by the Constitution, and the issuance of county railroad-aid bonds bearing interest payable annually, and the Board of Supervisors of the county, by ordinance, orders the election of semi-annual-interest bonds, and the people vote for the latter bonds, which are issued, and subsequently the Legislature passes a statute enacting the cure of such defect, the bonds in the hands of a *bonâ fide* purchaser for value are valid and binding on the county.

APPEAL from the decision of Hon. JOHN SMITH, special judge, presiding in place of Hon. S. S. Calhoon, judge of the Ninth Circuit Court District, who was disqualified by interest, denying a peremptory writ of *mandamus* against the Board of Supervisors of Madison County, to compel them to levy a tax to pay the bonds held by E. F. Cutler, the petitioner, on the state of case set out in the opinion of the court.

*F. B. Pratt*, for the appellant.

1. The Board of Supervisors had the right to make the interest payable semi-annually.   *Meyer* v. *Muscatine*, 1 Wall. 391; *Cowin* v. *Clark*, 4 Otto, 279.

2. If there was any defect in the bonds, the curative act of 1874 remedied such defect.   The people had already voted, under the ordinance, for semi-annual interest.   *Hartbrook* v. *Milwaukee; Thompson* v. *Lee County*, 3 Wall. 331.

3. The taking of the stock, the delivery of the bonds, and

payment of the interest for a series of years, are such acts of ratification as to commend the bonds to public confidence, and bind the county by waiving defects.

4. The petitioner is a *bonâ fide* holder without notice of any of the alleged defects, and, under the uniform doctrine of the United States Supreme Court, he takes the bonds free of such infirmities.    6 Otto.

5. The *bonâ fide* purchaser was bound to look no further than the face of the bond, and the statute under which it was issued ; and while he was bound to see that the requirements of the statute had been met, the recital in the bonds that they were issued·in accordance with that statute was an estoppel binding and conclusive on the county.    That recital was a judgment of the officers appointed to determine the question whether the law had been complied with.    Those officers were the. county's agents, not the bondholders'.    And now, when innocent purchasers have advanced their money on the faith of such decision, it is too late for the county to repudiate its agents' action.    4 Otto ; 6 Otto.

*John Handy*, for the appellee.

1. The question submitted to the vote of the people of Madison County was for bonds bearing interest payable semi-annually, while the statute authorizing the board to pass the ordinance directing the election and issue of the bonds provided for interest payable annually.    The variance was material. In twenty years the difference would be very great.    The statutory powers conferred on municipal bodies to issue bonds are very strictly construed, and must be strictly observed.    *Lawrence County* v. *Curtis*, 2 Kan. 115 ; *Hull* v. *Marshall*, 12 Iowa, 154 ; Sedgw. on Stat. & Const. Law.

2. The curative statute did not validate the bonds, because the issuance of bonds bearing semi-annual interest was never submitted to the people by authority of law.    Such a defect cannot be cured.    *Marsh* v. *Fulton*, 10 Wall. 676.    The people voted upon the proposition as made by the statute.    They had no notice of any change in its terms.

3. There was no legislative authority to issue the bonds in question. If there is want of authority to issue, there can be no *bonâ fide* holding of bonds. *East Oakland* v. *Skinner*, 4 Otto, 255.

4. But, assuming the ordinance to have authorized a vote for bonds bearing semi-annual interest, and the notice of election to have conformed therewith, and a two-thirds majority of the voters at a regular or special election, pursuant to such notice, to have voted for such bonds, the bonds would be clearly void for want of authority, the statute (whence flows the only power) directing annual-interest bonds. The curative act, in such case, is clearly unconstitutional. The language of the Constitution is, "shall not authorize," clearly contemplating *previous* legislation; and the other part of the sentence, at an election "to be held," has clearly the same import. *Hauhman* v. *Bates County*, 2 Otto, 572; *Concord* v. *Savings-Bank*, 2 Otto, 625; *Sykes* v. *Columbus*, 55 Miss.; *Marshall* v. *Silliman*, 61 Ill. 218; *Wiley* v. *Silliman*, 62 Ill. 170.

5. There is nothing in the idea of ratification by acquiescence. Void bonds cannot be in that way validated.

6. The petitioner does not prove himself a *bonâ fide* purchaser. But his sustaining that character is immaterial, because the purchaser of the bonds was bound to take notice of the requirement of the statute recited therein, and that the ordinance recited, and the bond, varied from the statute.

SIMRALL, C. J., delivered the opinion of the court.

The Board of Supervisors of Madison County issued to the Vicksburg, Yazoo City, and Canton Railroad Company sundry bonds, with coupons for interest attached, of which those in question are a part.

The eighth section of the act of 1870 ( Pamph. Acts, 205 ) authorized the Board of Supervisors, after certain conditions had been complied with, to issue to the aforesaid corporation county bonds bearing interest at seven per cent per annum,

which shall be payable to bearer, and which shall run for not less than twenty years, " *and the interest on the same shall be made payable annually.*"

The board, by its ordinance, directed the question of subscription to the capital stock of the corporation to be submitted to the qualified electors of the county, at a special election to be held on the thirtieth day of March, 1872, on the terms, among others, as follows, viz. : —

" The said subscription to be for the sum of $250,000, for which bonds of said county shall be issued, bearing seven per cent per annum interest, *payable semi-annually*, payable twenty years after date."

The act of April 6, 1874, amendatory of the charter of the company (Pamph. Acts, 184), in its first section enacted :

" And when such bonds have been issued by any county, bearing interest semi-annually, the action of such county is hereby ratified and confirmed, and the bonds so issued shall be valid and binding, notwithstanding the original charter directed that the interest should be paid annually."

The defendants set up in their answer, that the bonds were executed and delivered to the company in violation of the authority conferred by the Legislature, in this : that the interest was made payable semi-annually, on the first days of January and July, whereas the statute directed that " the interest should be made payable annually."

To this the relator makes several answers : first, that the bonds do not substantially differ from the requirement of the act of 1870 ; and, secondly, if they do, the defect is cured by the act of 1874, and also by confirmatory conduct *in pais.*

These defences are made against the relator, who prefers himself as a *bonâ fide* holder of part of the bonds and coupons. He offered no other proof of proprietorship except the possession and exhibition of the instruments.

The relator acquired the bonds before their maturity. The presumption is that he became proprietor for value, in the due course of business. The instruments are negotiable by delivery. Possession invests the holder before maturity, *primâ facie*, with the immunities of a purchaser without notice. In order to overcome this *primâ facie* right, so as to let in defences and equities between the original parties, the contestant must impeach his title. The *onus* is on him to adduce the facts to produce that result. The holder may rely on his title, unless it has been successfully assailed by the debtor. On this record we must regard the relator as a *bonâ fide* holder. See authorities cited by counsel for plaintiff in error, and *City of Vicksburg* v. *Lombard*, 51 Miss. 111. The weight of authority is, that in a suit on the original contract, interest on instalments of interest payable annually or semi-annually cannot be recovered. *Doe* v. *Marvin*, 7 Green, 48; *Sparks* v. *Garrigues*, 1 Binn. 165; *Hastings* v. *Wiswall*, 8 Mass. 455; *Murray* v. *Bishop*, 5 Paige, 100. Nor has the reservation of interest in semi-annual instalments on long loans been held to be violative of the statutes of usury, because no more is thereby exacted than the rates fixed by the statutes. (See authorities above cited.)

In *Mayor* v. *Muscatine*, 1 Wall. 337, the authority was " to borrow for a term of years, not exceeding twenty, on the bonds of the city, at a rate of interest not higher than ten per cent per annum, to be subscribed, in the name of the city, to the capital stock of the M. & M. R. R. Company." Under an ordinance of that import the vote was taken, and bonds were issued, *payable in New York*, interest at the rate of ten per cent per annum, *payable semi-annually*. Objection was made, that the stipulation to pay *semi-annual interest* transcended the authority, which limited the rate at not higher than ten per cent per annum. To this objection the court responded, " that it has no foundation;" holding " that parties may always contract for the payment of that rate, before the principal debt becomes due, at periods shorter than a year."

In *Commissioners* v. *Clark*, 4 Otto, 287, one of the defences was, that the bonds were invalid because the interest is payable semi-annually, instead of annually, as stipulated in the proposition submitted to the voters. That defence was overruled, on the authority of the case reported in 1 Wall. 391.

The principle contained in this case, and the one to which it refers, is, that a stipulation to pay interest at seven per cent, semi-annually, does not violate a proposition adopted to pay the interest annually; that no greater rate of interest is paid in the one case than the other; that when the first instalment is paid, interest for half the year has been earned, and when the last instalment matures, interest for the other half has accrued.

There are cases which hold that terms in the contract in excess of the authority may be rejected as surplusage, but we do not think it necessary to rest our decision on this branch of the case on either of the grounds stated.

We had occasion recently, in *Sykes* v. *Columbus*, 55 Miss. 115, to consider the power of the Legislature to ratify a municipal debt incurred to give aid to a railroad company, as affected by the fourteenth section of art. 12 of the Constitution. It was stated that the current of authority was, that defective or irregular exercise of municipal power could be ratified by the Legislature where the Legislature could have originally conferred the power. But, inasmuch as the county or town could not lend its aid or credit to the railroad company except on the approval of the qualified electors, as prescribed in the Constitution, it was *ultra vires* of the Legislature to dispense with that vote. It is the consent of the qualified electors, expressed at the election, that confers power on the Board of Supervisors to act. *Hawkins* v. *Carroll County*, 50 Miss. 735.

The Board of Supervisors cannot issue bonds to pay for stock subscription to a railroad company without the consent of the qualified electors, given as prescribed in the Constitution.

If that is wanting, a curative or ratifying act of the Legislature would impart no validity to the bonds.

The essential conditions to the creation of that sort of indebtedness by the county are: first, legislative authority; and, second, a vote of the qualified electors. The Legislature cannot impose the debt on the municipality without its consent, manifested in a particular way.

The Legislature, in the act of 1870, authorized the county of Madison, and other municipalities specially interested in the proposed railroad, to subscribe for stock and issue bonds, if the proposal were ratified at a special or general election. But the bonds, according to the act, were to bear not exceeding ten per cent interest per annum, and that was to be paid annually.

The Board of Supervisors *submitted* and the electors *approved* the subscription and issue of bonds, with interest payable semi-annually. Aid to the enterprise had the sanction of the Legislature and the Board of Supervisors, and of the electors, to the extent of $250,000, at ten per cent interest; the bonds to be delivered, in fixed amounts, as the work was completed.

The board and the electors concurred that the bonds would be more available to the company with interest payable semi-annually; and, since the rate was not increased, they may have supposed that the change was not material.

If the Legislature had authorized, in the first instance, interest to be made payable semi-annually, the validity of the bonds would not be doubted.

But the Board of Supervisors and the electors supposed that this modification would be expedient. That has been declared in the ordinance and the vote for the subscription. These represented all parties to be affected as debtors. The Legislature gave its assent, and ratified what had been done.

This is far from being an effort to impose a debt on the county without its consent. The agreement of the people of the county to incur the debt, in the precise shape which it

assumed, has been expressed. Their representatives, the county authorities, in execution of that will, have delivered the bonds, and the Legislature afterwards affirmed. If there has been any departure from the letter of the original authority, it acquiesces in such deviation, cures the irregularity, and makes valid the bonds. The principles announced in *Supervisors* v. *Schenck*, 5 Wall. 776, 789, fully support these views.

In *St. Joseph Township* v. *Rogers*, 16 Wall. 659, the act authorized municipal bonds in aid of the railroad, on an approving vote by the town, county, or township, and validated all bonds theretofore issued by such municipalities. It was · held that, although the election was held in the township before the act was passed, yet the act ratified it, and made the bonds obligatory. Also, *Thompson* v. *Lee County*, 3 Wall. 327 ; *City* v. *Lamson*, 9 Wall. 447 ; *Bissell* v. *Jeffersonville*, 24 How. 295.

In addition to the act of 1874, the relator relies on the conduct of the county authorities and the tax-payers as ratifying the execution and delivery of the bonds and coupons, and as curative of any irregularity or defect in the original transaction. These acts consist in the acceptance by the Board of Supervisors of certificates of stock, and being represented and voting in the meetings of the stockholders ; in the assessment and collection of taxes for several successive years, and the payment of the coupons of interest therewith ; and the omission for this long period, by the county authorities or tax-payers, to contest in the courts the validity of the debt.

It is claimed that these acts contributed to give credit to the bonds, and that this long recognition of liability might induce the belief that investments in them could be safely made. We have been referred to many cases which attach great importance to such acts. *Johnson* v. *Stark*, 24 Ill. 89 ; 7 Ohio St. 331 ; 14 Ohio St. 386 ; *Rogers* v. *Burlington*, 3 Wall. 667.

The bonds contain, among other things, a recital that they were issued " pursuant to an ordinance of the Board of Supervi-

sors  *   *   *  directing a subscription of $250,000 to the capital stock of the company, and were authorized by a vote *   *   *  at a special election held on the 30th of May, 1872, under an act of the Legislature entitled 'An act to incorporate,' etc., approved March 21, 1871.'' There is a mistake in the date of the act. The true date is *1870*. That this mistake does not vitiate the recital is obvious. See 4 Otto.

The effect of a recital in the bond in the hands of a *bonâ fide* purchaser is correctly stated in sect. 22 of Dillon on Municipal Bonds, viz. : If there exists legislative authority, not in conflict with the State or Federal Constitution, to issue the bonds, and they are duly executed by proper officers, who are invested with authority, under the law, with power to decide whether conditions precedent have been performed, and they so declare or recite, the issue of such bonds, under such circumstances and with such recitals, is conclusive as to the facts so stated, and estops the municipality, in a suit on the bonds, to aver and prove the contrary. *Murray* v. *Township of Oswego*, 92 U. S. 638 ; *Town of Coloma* v. *Evans*, 92 U. S. 484 ; *Commissioners* v. *Nichols*, 14 Ohio St. 260 ; *Moran* v. *Miami County*, 2 Black, 732 ; *Mercer County* v. *Hackett*, 1 Wall. 83 ; *Supervisors* v. *Schenck*, 5 Wall. 784. The doctrine is firmly established by the Supreme Court of the United States, and was distinctly recognized in this court in *City of Vicks-* *burg* v. *Lombard*, 51 Miss. 126, 127.

The statute under which these bonds were executed made it the duty of the Board of Supervisors to canvass the votes, and declare the result of the election. Their decision is conclusive on the county, in a controversy between it and a *bonâ fide* purchaser of the bonds. The decision of the board does not have that effect, but the correctness of it is open to investigation on the facts, at the suit of any person interested, before the bonds have been negotiated to a *bonâ fide* purchaser. *Hawkins* v. *Carroll County*, 50 Miss. 735.

Evidence that the proposition, at the election, did not receive the favorable vote of two-thirds of the qualified electors, tends

to prove that the declaration of the result by the Board of Supervisors was erroneous. But that question is not open to investigation in a suit brought against the county by a *bonâ fide* holder of the bonds and coupons attached. The county is precluded from that defence, by the order entered on its records and the recital in the bonds.

The recital also cures any irregularity or want of fulness in the notice of the election. *City of Vicksburg* v. *Lombard, supra,* and cases there cited.

We did not suppose that it could be seriously doubted that it was competent for the Legislature to submit a proposition of subscription to the stock of a railroad company, and to issue bonds, at a special election held for that purpose and no other. The will of the electors could be more certainly and deliberately ascertained at such election than at a general election, where the voters would be distracted and their attention divided by other considerations and duties. The plain and ordinary signification of the words used in the Constitution admit of a special election to pass on a proposition of aid or credit. We do not doubt that they were so employed by the Convention, and have been so understood by the legislative department and the people. Such has been its practical interpretation in this State, and in other States having a similar provision in their Constitution, — notably so in Missouri. In the many cases litigated in the courts, where bonds have been authorized at a special election, counsel and courts have never suggested a doubt as to the propriety of such proceeding.

The result is, that the judgment is reversed, and cause remanded for further proceedings.

In conformity to request of counsel, we have considered the questions on their merits, without reference to the formality of the pleadings.