## BOARD OF SUPERVISORS OF MADISON COUNTY *v.* J. LANGDON BROWN ET AL.

1. COUNTY BONDS. *Two-thirds vote. Registration lists. Decision of board of supervisors. Estoppel. Bona fide holders.*

    Where under an act, in pursuance of § 14, art. xii. of the constitution, which prohibits the legislature from authorizing any county to subscribe to the capital stock of any corporation unless two-thirds of the qualified voters assent thereto, the board of supervisors is constituted the tribunal to determine whether at an election held for that purpose the requisite majority has been given, as a condition to the valid issuance of bonds of the county; and after such determination and the issuance of bonds reciting a compliance with preliminary conditions, the county is estopped as against innocent purchasers for value, to deny the validity of the bonds upon the ground that as a matter of fact, less than two-thirds of the qualified electors voted for the subscription, and that the registration lists of the county show this. *Vicksburg* v. *Lombard,* 51 Miss. 111; *Cutler* v. *Madison County,* 56 Ib. 115, and *Madison County* v. *Paxton,* 57 Ib. 701, cited.

2. SAME. *Constitutional requirement. Registration list; not a fixed record from which to determine majority.*

    Although it is a constitutional requirement that the subscription shall not be made except upon a two-thirds vote, the legislature is not prohibited from designating a tribunal which is to determine the essential fact as to a proper majority. Nor does the constitution prescribe the evidence upon which such tribunal is to act. It does not make a variable registration list a record, importing verity, from which alone this determination is to be made. It is to be made by the board of supervisors, upon investigation, ascertainment and the exercise of judgment. Therefore, regardless of what the registration lists show, the decision of the board as to the fact of a two-thirds majority is conclusive against the county in any controversy with *bona fide* holders of the bonds.

3. SAME. *Stare decisis. Innocent holders protected.*

    On the authority of the judgment of this court in former cases (one of them relating to bonds of the same issue), it is to be assumed that the bonds in question have commended themselves to persons seeking investment. Therefore, in the absence of controlling reason and authority, on the doctrine of *stare decisis*, the court would feel· constrained to protect the interest of innocent holders.

FROM the ·chancery court of Madison county.

HON. WARREN COWAN, Chancellor.

The case is stated in the opinion of the court.

*E. E. Baldwin,* for appellant.

The record shows that at the election in question 1067 votes were cast in favor of the subscription, whereas there were over 3000 registered voters in the county. The bill charges that this was well known to the board, but that it fraudulently suppressed the fact, and made the entry declaring that more than two-thirds of the voters had favored the subscription, for the special purpose of making the record and the face of the bonds show an apparent conformity to the constitutional requirement. The injunction here, is upon the ground that the board of supervisors had no right to make any declaration except as to matters of fact, and was not empowered to make deductions therefrom ; and, therefore, that the county is not estopped by the recitals of the order of the board from setting up the invalidity of the bonds.

Under the decision of this court in *Hawkins* v. *Carroll County,* 50 Miss. 735, the measure of the constitutional limitation upon the loaning of the credit of counties, is the assent of two-thirds of the qualified voters, and the evidence of the right to vote is the registration book, unless it is shown that the voter has died or removed. It is competent, then, for the board to determine these facts, namely, the number of legal voters, the number voting for and the number voting against the subscription. This it did not do, but evaded making a statement which would have rendered the bonds invalid on their face, and confined itself to the general statement, not of fact but a *deduction* from what was assumed to be true, that two-thirds of the legal voters had favored the subscription. The ques-

tion as to the effect of such declarations, not of fact but mere deductions, upon the validity of bonds in the hands of holders for value, is carefully considered in the two cases of *Dixon County* v. *Field;* 111 U. S. 83; and *Lake County* v. *Graham,* 130 Ib. 674. These cases squarely decide that in such a case there is no estoppel on the county against setting up the original invalidity of the bonds.

They also decide that where there is a constitutional limitation on the loaning of credit, and, to determine whether it was complied with, reference must be had to another record, holders of bonds must always look to *such record* for the authority to issue, and that they always have constructive notice of the contents of the same; and, further, that neither the legislature nor any other tribunal can by any finding or determination relieve from this. Such being true, the bondholders here have always had notice that the requirements of the law were not complied with, and that the bonds are invalid.

*F. B. Pratt,* for appellee.

1. The only defect in the bonds complained of in this case, is the fact that they were not issued upon a two-thirds vote. This question was fully settled in favor of the validity of the bonds by this court in *Cutler* v. *Madison County,* 56 Miss. 115, the bonds in question being the same issue as those passed upon in that case. The point is now made that the legislature had no power to delegate to the board of supervisors the power to determine the question of fact as to whether there was a two-thirds vote in favor of the subscription, the requirement as to the two-thirds vote being a constitutional one. In other words, it is claimed that the legislature had no power to designate any method of determining the question whether the necessary condition had been complied with; but, in the language of the bill, that this question must remain forever open and undetermined. The proposition is, to say the least, a novel one. It has the merit of being a new discovery, and it seems to have been overlooked by Dillon, Cooley, Dwarris, Potter and others supposed to know something of constitutional law. It is settled that the legislature may authorize a county to issue bonds and may require, as a condition, the performance of some act, as a

two-thirds vote, and that it may appoint a tribunal to determine as to the performance of such condition. And it is immaterial that the condition is imposed by the constitution. Without any provision in the constitution as to this, the legislature would have the authority to authorize the subscription, and it may impose the condition of a two-thirds vote, or any other deemed proper. It may also designate a tribunal to determine whether the conditions have been complied with, and necessarily the decision of the tribunal would be binding on the county. The cases cited by opposite counsel are not in conflict with our decisions, but simply hold that where the power to issue bonds depends upon the existence of *some fact of record*, the officers of the county cannot bind it by a recital that such fact existed when the record showed the contrary; that in such case the purchaser of bonds must at his peril take notice of the contents of such a record. If the constitution or statute makes the power to issue dependent upon the existence of a fact ("ascertainable by reference to express records of public character"), the purchaser must see to it that the fact is shown by the record; but where the power to issue depends upon facts to be *ascertained and determined* by a tribunal charged with the power, then its determination is binding on the county, and the purchaser need look no further than the record made by it and the recitals in the bonds themselves.

2. But concede, for the sake of argument, that the cases relied upon by opposite counsel hold the doctrine contended for by him, this court is not bound by these decisions. They are persuasive only. And suppose, that they are sufficiently persuasive to induce this court to recede from its former decision and overrule cases, what then? The supreme court of the United States has announced the doctrine that *two-thirds of those voting* answered the constitutional requirement. Therefore, in any view of the case, the demurrer was properly sustained.

*W. P. & J. B. Harris,* on the same side.

1. The power of the legislature to authorize counties to issue bonds was full and unrestricted when the present constitution,

requiring a two-thirds vote, was adopted. It was competent for the legislature to prescribe this condition. There is nothing in the fact that the registration of voters and the two-thirds vote are constitutional, instead of legislative, requirements. *Bradley* v. *Villere,* 66 Miss. 399.

The process indicated by the constitution involves the essential idea of official supervision, inquiry, judgment and conclusion by some person or tribunal appointed to declare the result and authorize the issuance of bonds. That the legislature may appoint such tribunal and vest it with the requisite authority, is a necessity implied from the very method fixed by the constitution in the ascertainment of the public will. *Town of Coloma* v. *Eaves,* 92 U. S. 484.

There is a distinction between a constitutional provision, which fixes an abolute limit of power by a fact which appears in a public record speaking for itself with absolute verity, and the ascertainment of the public will by means of an election. *Dixon County* v. *Field,* 111 U. S. 83.

In *Lake County* v. *Rawlins,* 130 U. S. 662, the court decided that the constitution of Colorado had fixed an absolute limitation upon the power of the county, as also the power of the legislature, and had named a limit, to wit, a certain percentage on the assessed value of taxable property of the county. This stood as a public record and spoke for itself, and put the purchaser upon notice. So in the case of *Lake County* v. *Graham,* 130 U. S. 674, where it was held that the standard of validity was created by the constitution, and it was held that it was not within the power of the legislature to dispense with the requirement. The reference there was to a certain per cent on the assessed value of property. The assessment spoke for itself; whether true or false, it stood as a record and required no investigation or decision.

The registration of qualified voters is *prima facie* evidence that the persons named are qualified to vote. Code 1871, § 373. In ascertaining whether a two-thirds vote had been cast, the registration books are competent *evidence* as tending to show what has been

done, but it is not conclusive of the fact.    *Hawkins* v. *Carroll County*, 50 Miss. 735

In *Vicksburg* v. *Lombard*, 51 Miss. 111, this court decided that where the condition of subscription was an election to ascertain the assent of the majority, the decision of the officers appointed to determine the result was conclusive in favor of innocent holders, adopting the then current doctrine on the subject.   The next case was *Cutler* v. *Madison County*, 56 Miss. 115, important and decisive, because it involved the issue of bonds of which those in controversy are a part.   There the court decided that a holder of one of these bonds was *prima facie* a *bona fide* holder, and as to such the actual state of the polls and the number of votes were not open to investigation, after determination by the board of supervisors, in view of the recitals on the face of the bonds.

The question of the validity of these bonds was again before the court in *Madison County* v. *Paxton*, 57 Miss. 701, in which the cases of *Lombard* v. *Vicksburg* and *Cutler* v. *Madison County*, were brought to the attention of the court, and it was assumed that if Paxton had been a *bona fide* purchaser, he would have been protected for the reasons above stated.   In 1877, prior to the decision in *Cutler* v. *Madison County*, the question of the validity of these bonds was passed upon by the United States circuit court for the southern district of Mississippi, and the court decided the bonds valid for the reasons before noted, and no appeal was taken.   Thus it will be seen that indeed we are threshing old straw.

2. If we admit that the decisions of the supreme court of the United States were obligatory and binding here, the plaintiff would be no better off, for in *Carroll County* v. *Smith*, 111 U. S. 556, it was said that our constitutional provision required no more than two-thirds of the *votes cast*.

3. We are not left in doubt about the position of the supreme court of the United States on the line of cases where the assent of majorities is required before the issuance of bonds, and the effect of the official act of those to whom the duty to examine and decide and then to issue bonds is assigned.   On this point, see the case of *Bernards Township* v. *Morrison et al.*, 133 U. S. 523.   In that case the court,

quoting the language of *Montclear* v. *Roundsell*, 107 U. S. 147, said that all a bond-holder was required to show in a case of this kind was that the commissioners were appointed. It is not necessary to show that he was a holder for value, or that the conditions were performed; that the one was presumed, and the other was established by the act itself. The court also cited 47 N. J. L. 401; 42 · Ib. 235; 117 U. S. 336; 109 Ib. 341. Also, especially, *Oregon* v. *Jennings*, 119 Ib. 74. *Cutler* v. *Madison County* is on the line of all the adjudications on the subject, and is conclusive. It has stood for ten years, and has been the basis of dealing with these very bonds. It is unassailable; but, if not, under it the holders of these bonds would be protected on the doctrine of *stare decisis*.

If the constitution had provided that two-thirds of the votes, *as shown by the books of registration*, should be required, this might have brought the case nearer to that where the ·constitution fixed the standard, as in the case of a reference to an assessment roll.

Argued orally by *E. E. Baldwin*, for appellants, and *W. P. Harris* and *F. B. Pratt*, for appellee.

WOODS, C. J., delivered the opinion of the court.

The board of supervisors of Madison county exhibited its original bill in the chancery court of that county for the purpose of enjoining the further payment of any of the bonds issued by said county to the Vicksburg, Canton & Yazoo City Railroad Company. The *gravamen* of complainant's bill is that these bonds are invalid because the subscription to the capital stock of said railroad company, and the issuing of the bonds were not made after two-thirds of the qualified voters had signified their assent thereto, as required by the constitution of the state and the act of the legislature passed in that behalf. The bill does not deny that the respondents are *bona fide* holders of the bonds, and without notice of the alleged irregularity complained of as rendering the bonds invalid; but the ground relied upon is, that the respondents, though purchasers without notice in the usual acceptation of that term, are yet not to be protected, for the reason that their innocence in this case is only and really their ignorance of the essential facts, as is alleged, that

less than two-thirds of the qualified voters of the county assented to the subscription to the capital stock of said railroad company, and that this essential fact was and is a matter of public record, equally accessible to all persons, being contained in the registration lists of the voters of the county.   In other words, this is the underlying proposition on which the contention of the bill of complaint rests, namely, that, though an election was conducted under the forms and in accordance with the provisions of the act of the legislature; though the board of supervisors examined the returns made to it by the officers who managed the election, and, as the result of such examination, determined that two-thirds of the qualified voters of the county had assented to the subscription; and, though the recitals in the face of the bonds declare that two-thirds of the qualified voters had cast their ballots in favor of such subscription, nevertheless the bonds are invalid, even in the hands of *bona fide* holders, for the reason that the board of supervisors had no authority or power to ascertain, determine and declare the essential fact that the requisite two-thirds of the qualified voters had assented to the subscription, this essential fact being referable to and determinable alone by a fixed standard, to wit, the registration lists of the voters of the county.

This summary epitomizes the substance of the bill of complainants.   To this bill the respondents presented their demurrer, which, by the court below, was sustained, and from this action an appeal was taken to this court.

The magnitude of the question, and the largeness of the interests involved in the determination of the issue thus made up, has led us to a review of the jurisprudence of this state on this subject, though the same had long been regarded as settled upon an immovable basis.

Counsel for appellant, in argument, concedes that the controversy, in several causes determined in this court, has been, apparently, decided adversely to the views advanced by complainants; but we are pressed to enter upon a revision, or modification of the former adjudications, on the idea that the identical question now submitted to us has been passed upon recently by the supreme

court of the United States, with the result of that tribunal depart-
ing or receding from its long line of decisions, beginning with *Knox
County* v. *Aspinwall*, 21 Howard, 539 ; and we are referred to the
case of *Dixon County* v. *Field*, 111 U. .S. 83, and especially to
*Lake County* v. *Graham*, 130. Ib. 674, as supporting the views of
appellant's counsel.

A careful examination of the facts of these two last-named
cases, and of the opinions of the court on their facts, shows that
in each there was a constitutional limitation imposed upon the
power of the counties, over which they might not pass, in making
subscriptions to the stock, of railroad companies, and that this
limitation was determinable, by every person, by a fixed, absolute
standard—by reference to a self-evidencing public record, to wit,
the assessment rolls of the counties. A constitutional provision
imposed an unqualified limit upon the power of the counties, and
this limit was to be ascertained and determined by reference to
a fixed standard—a public record, which was made of absolute
verity. In these cases, it was held by the supreme court of the
United States that the essential fact, as to due observance of the
constitutional limitation, was to be ascertained and determined, not
by the officers to whom the execution of the power was delegated,
but by reference to a standard fixed by law—a public record ; that
the essential fact, as to whether the limit of a certain rate per
centum on the assessed valuation of the taxable property of the
counties had been observed, was to be ascertained and determined
only by reference to the assessment roll itself—a record, made by law
of absolute verity for the ascertainment and determination of such
essential fact. In such cases there are no returns of an election to
be made to a certain tribunal ; there is no canvass of such returns ;
there is no determination thereon ; and there is no declaration of
any final judgment by such tribunal. There is only need of refer-
ence to the fixed standard to ascertain and determine the essential
fact, and this standard, speaking for itself, and without any assist-
ance from any tribunal, with absolute verity, is open to all, and
equally accessible to all, and its voice is equally distinct in its
declaration of essential facts, in the ears of all. In cases of this

class, the county is never estopped to deny the validity of bonds issued in disregard of constitutional limitation.

That the distinction was clearly in the mind of the supreme court of the United States, in its opinion in the case of *Lake County* v. *Graham*, 130 U. S. 674 (the latest case on this subject, determined in that court, on which appellants' counsel relies), is manifest when Mr. Justice Lamar, as the organ of the court, says : " The question here is distinguishable from that in the cases (election cases, as we denominate them, for convenience) relied on by counsel for defendant in error. In this case the standard of validity is created by the constitution. In that standard two factors are to be considered, one the amount of the assessed value, and the other the ratio between the assessed value and the debt proposed. These being exactions of the constitution itself, it is not within the power of the legislature to dispense with them, either directly or by the creation of a ministerial commission whose finding shall be taken in lieu of the facts."

In that case, the constitution having fixed an absolute standard of ascertainment and determination, the legislature could not legally make provision for a tribunal of ascertainment and determination whose finding of the essential facts should take the place of the unvarying constitutional standard. In that case, as was said by Mr. Justice Matthews, speaking for the court, in *Dixon County* v. *Field*, 111 U. S. 83, " nothing in the way of inquiry, ascertainment or determination as to the fact (the assessed value of the property, as shown by the record), is submitted to the county officers. They are bound, it is true, to learn from the assessment what the limit upon their authority is, as a necessary preliminary to the exercise of their functions and the performance of their duty; but the information is not for themselves alone. All the world besides must have it, from the same source, and for themselves. The fact, as it is recorded in the assessment itself, is extrinsic, and proves itself by inspection, and concludes all determinations that contradict it."

It thus appears with perfect clearness, we think, that, in the two cases we are considering, the supreme court of the United States

has not designed to overrule, and has not, in fact, overruled the line of cases which hold, that the determination and declaration of the tribunal to which authority has been given to ascertain what had been done preparatory, and as a condition precedent, to its own action, and whose duty it was to issue the bonds, if the conditions precedent were ascertained to have been met, shall estop the municipality or county issuing the bonds from denying their validity, when the bonds in their body contain recitals of the essential facts, and when they are found in the hands of *bona fide* holders.

These two cases, *Dixon County* v. *Field* and *Lake County* v. *Graham*, belong to the *genus* which includes the case of *Knox County* v. *Aspinwall*, 21 Howard, 539, and the cases, in our own state, of *Vicksburg* v. *Lombard*, 51 Miss. 111 ; *Cutler* v. *Madison County*, 56 Ib. 115 ; and *Madison County* v. *Paxton*, 57 Ib. 701, but to a different species. The distinction in the classes of cases is plainly marked and readily distinguished.

We have already considered one class. Let us now examine the other and note the *indicia* which differentiate this from the class just examined.

It will simplify the further argument, and will aid the discussion of the remaining branch of the case, as we have marked it out for consideration, to say here that the ascertainment and determination of the limitation of our own constitution upon legislative authority and county power to issue bonds in election cases similar to the one at bar, is not referred by the organic law to any absolute, fixed standard. There is no creation, or hint of any creation, in section 14, article xii, of the constitution, of any fixed standard by reference to which the limitation imposed in that section and article will be self-evidencing. In the cases in 111 U. S., and 130 Ib., the constitution made the assessment roll the unvarying standard of ascertainment and determination; whereas, in the provision cited in our fundamental law, a variable and constantly changing registration list, is not declared to be the fixed standard importing absolute verity. In the very nature of things, it is incredible that the constitution designed to make an ever-changing, never accurate registration list the fixed standard of ascertainment and deter-

mination. It should be borne in mind that the registration list is itself but a piece of evidence which tends only to show what is the true voting population, and that it is subject to contradiction and overthrow, even when offered in evidence.

Returning now to the point before us, we ask: What are the characteristics distinguishing the class of cases which appellees' counsel insist embraces the case at bar, and which, for convenience, may be denominated *election cases*, from the class embracing *Dixon County* v. *Field*, and *Lake County* v. *Graham?* It may be said, generally, that where power is conferred upon a municipality or county to make subscription for stock and to issue bonds therefor, after the requisite number of qualified voters have assented thereto at an election legally held; and, where the returns of such election are to be made to a designated tribunal clothed with the power of making such subscription and of issuing such bonds, the conditions precedent to this action have been complied with, then, and in every such case, there is no absolute standard for testing the constitutional limitation, and the case falls, not into the small and comparatively modern class examples from which we have seen in *Dixon County* v. *Field*, and *Lake County* v. *Graham*, but into the large and well-known class in which the limitation is ascertained and determined without recourse to a fixed, absolute standard. In this class of cases there must, nevertheless, be some ascertainment and determination of the essential facts authorizing the subscription before it can be made and before the bonds can be issued. Indeed, no subscription can be made or any bonds issued until there has been investigation, ascertainment and determination of the essential facts which are necessary to be established as preliminary and prerequisite to the action of the tribunal which is charged with the execution of the power of making the subscription and of issuing the bonds. By what rule or by whom is this investigation, ascertainment and determination of the preparatory and essential facts to be made? Indisputably, not by any infallible standard imbedded in the constitution itself, for there is none such; but manifestly, and of necessity, by some tribunal created for that purpose, and competent for the task—a tribunal which must hear and

compare the evidence as to the facts, and which must investigate, determine and pronounce judgment. What tribunal, then? Incontestibly, that tribunal to which the election returns are to be made, and by which the subscription for stock is to be made and the bonds issued. This is the only tribunal provided, and, *ex vi termini*, it is the one charged with the power and duty of ascertaining and determining in reference to the essential fact of assent by the constitutional number of qualified voters. Moreover, to hold that this tribunal shall not ascertain and finally determine, but that this ascertainment and determination is to remain forever open to dispute and adjudication, so long as any given bonds remain outstanding, would be effectively to frustrate the public purpose of aiding the development of the country by extending municipal or county assistance to projected railroads, for bonds whose validity was perpetually disputable would have no marketable or other value. See *Coloma* v. *Eaves*, 92 U. S. 484.

Beginning with *Knox County* v. *Aspinwall*, 21 Howard (U. S.), 539, and running through a long line of cases, ending with *Township of Bernards* v. *Morrison*, 133 U. S. 523, in which Mr. Justice Brewer delivered the opinion of the court, the supreme court of the United States has uniformly held, that the ascertainment and determination of the essential fact of the assent of the required number of voters requisite to authorize subscriptions for stock and the issue of bonds, belong to the tribunal to which was confided the control of the matter. In the last-named case, Mr. Justice Brewer observes : " While it is true that the act does not in terms say that these commissioners are to decide that all preliminary conditions have been complied with, yet such express direction and authority is seldom found in acts providing for the issuing of bonds. It is enough that full control in the matter is given to the officers named."

And this conducts us to the conclusion that there is no foundation upon which to plant the contention of appellant's counsel, that the supreme court of the United States has either overruled or modified any former decision, made in that forum, along the line of kindred adjudication.

There can be no room for skepticism as to the true doctrine in this state.   In *Vicksburg* v. *Lombard*, 51 Miss. 111, it was said that, "if the constituted authorities of the city put the bonds on the market, or deliver them to the railroad company for sale, on the assertion that the proper vote was given, the city ought to be estopped from setting up against the *bona fide* holder the plea that the assertion is untrue."   In *Cutler* v. *Madison County*, 56 Miss. 115, Chief Justice Simrall, speaking for the court, said: "The statute under which these bonds were executed made it the duty of the board of supervisors to canvass the votes, and declare the result of the election.   Their decision is conclusive on the county, in a controversy between it and a *bona fide* purchaser of the bonds." In *Madison County* v. *Paxton*, 57 Miss. 701, Chief Justice George, in speaking of a part of the series of bonds involved in the present litigation, said: "It will be noticed that there is no attempt to shelter Paxton's purchase under the rights which a purchaser from the company may have had, in case his purchase was *bona fide.*" The overwhelming force·of the two cases last cited as authority in the case at bar, will be acknowledged by every one when it is remembered that the bonds whose validity was there assailed, and the bonds in the case before us, are parts of the same issue.

That the county is now estopped to deny the validity of these bonds in the hands of *bona fide* purchasers, must be regarded as placed beyond controversy.

It is hardly necessary to remark that the views herein advanced are to be applied only to a case wherein the illegally issued bonds are found in the hands of innocent purchasers without notice, and that they have no reference to cases of bonds issued wrongfully, which have not been put upon the market and bought by innocent purchasers.

If, however, we entertained any doubt as to the weight and value of the great current of authority on which we rest our opinion, we should feel constrained still to protect the rights of the holders of the bonds in this suit.   The sound and wholesome rule of *stare decisis* becomes, under the circumstances of this case, a righteous doctrine not to be departed from.   On the authority of the judg-

ment of this court in former cases, these bonds, as we must suppose, have commended themselves to prudent persons seeking safe investment. Surely, then, in the absence of all-imperious reason and authority for change, this is a pre-eminently proper case in which to say, we stand by the former decisions.

*Affirmed.*