## BEISER *v.* SUPERVISOR'S DISTRICT No. 2 OF SMITH COUNTY.

[75 South. 594, Division B.]

MUNICIPAL CORPORATIONS. *County bonds. Accrued interest. Delivery before payment by bidder.*

Where a county issued bonds for a road district, payable to bearer and the bonds were delivered to the bidder therefor, without his paying the accrued interest on such bonds, and the county treasurer gave his receipt acknowledging payment, and a certificate of regularity as to the issuance of the bonds; the county was liable to a *bona-fide* purchaser of the bonds for value without notice for the accrued interest, since it could have refused to surrender the bonds to the bidder until the amount of his bid and the accrued interest had been paid.

APPEAL from the circuit court of Smith county.

HON. W. H. HUGHES, Judge.

Suit by George William Beiser against Supervisors District No. 2, Smith County. From a judgment, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Frank F. Mize,* for appellant.

It was the contention of the appellant in the court below and is his contention now that he was a purchaser of the interest coupons sued on, for value, in good faith and before maturity, without any knowledge or information remote or otherwise of any agreement made by appellee with J. R. Sutherlin & Company, the original purchaser of the coupons, and without any notice or intimation of existing fraud or equities between the maker and the original purchaser.

The appellee contended that it was not liable by reason of an agreement had and made with J. R. Sutherlin & Company to the effect that appellee would not be required to pay the first installment of interest; that appellee did not receive any consideration for which said interest coupons were executed, and therefore the consideration wholly failed.  Appellee also contended that the bonds with coupons attached were sold and delivered to J. R. Sutherlin & Company, six months after date of execution, and that the accrued interest thereon was not paid, thereby selling said bonds below face value.

Nowhere in the record is there any testimony that even hints that appellant had any information or knowledge of any agreements between appellee and the said J. R. Sutherlin & Company, that the interest, first installment of interest, on the bonds should not be paid, but it affirmatively appears that appellant had Weil, Roth & Company to buy these bonds with the coupons attached, for his account, on December 27, 1917, which date was prior to the date of the maturity of the said coupons, and it also affirmatively appears that said purchase was in good faith for value and without notice of any equities between the appellee and the said J. R. Sutherlin & Company.

We assume that it will not be disputed that interest coupons, whether state, county or municipal, payable to bearer are transferable by delivery and subject to the

same rules of commercial law as negotiable bills of exchange and promissory notes. This principal is laid down in volume 8 of second edition, Encyclopedia of Law, page 8. We also find the following principle of law laid down, in Vol. 8, (2 Ed.), Enc. of Law, page 9. "Negotiable coupons being transferable by delivery although detached from the bonds, the rule of *caveat emptor* does not apply, and a purchaser in good faith, before maturity, from one who has stolen them acquires a valid title. But if the coupons are not negotiable, or if they have been purchased after maturity, the purchaser acquires no better title than the thief could give" quite an array of authorities approving these principles are to be found in the notes thereunder.

In Vol. 2, page 1686, sixth edition, Daniel on Negotiable Instruments, under coupon bonds, we direct the court's attention to the following: "The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid, against all the world. Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on part of the taker, at the time of the transfer will not defeat his title. That result can be produced only by bad faith on his part." Under the same authority, pages 1689 and 1690, we quote, "coupon becomes due, as we have already seen, on the very day fixed for payment of interest on the bond (without grace), whether it be drawn in form of a bill, note, check, or mere interest warrant." *Craig v. The City of Vicksburg,* 31 Miss. 216; *Stokes v. Winslow,* 31 Miss. 520; *Cobb v. Duke,* 36 Miss. 67; *Hart v. Taylor,* 70 Miss. 659; *Gillespie v. Planters Oil Mill Co.,* 76 Miss. 410; *Lampton v. Edwards,* 54 So. 245.

We submit that the court below erred in not giving appellant judgment for the amount sued for, to wit: Seven

hundred and fifty dollars, and legal interest thereon from January 1, 1915, and that this case ought to be reversed and the lower court ordered to enter judgment for the amount sued for, or that judgment be entered in this court for said amount.

C. A. *Loomis,* for appellant.

Points and Authorities.   Point one.   Smith county, Mississippi, is estopped from denying that it received par and accrued interest for the bonds, having issued and delivered the official receipt of its treasurer which accompanied the bonds certifying that he had received par and accrued interest.   4 A. & E. Ency. of Law (2 Ed.) 307; 28 Ency. of Law & Prac. p. 1624; 5 McQuillin on Municipal Corp., 5, secs. 2327, 2337, 2339; 2 Dillon on Munic. Corp. (5 Ed.), pages 905-930 inc., *Madison Co. v. Brown,* 67 Miss. 684; *Aberdeen v. Sykes,* 57 Miss. 236; *Vicksburg v. Lombard,* 51 Miss. 111; *Cutler v. Madison Co.,* 56 Miss. 115.

Point two.   The plaintiff purchased the coupons sued on after their maturity on June 14, 1915.   The parties from whom he purchased the coupons were owners and holders in good faith, before maturity and plaintiff acquired the same title which the parties had, from whom he purchased the coupons.   4 A. & E. Ency. of Law (2 Ed.), page 308; *Butterfield v. Town of Ontario,* 32 Fed. 891: *Badley v. Bank* (Kan.) 16 Pac. Rep.; *Cromwell v. Co. of Sac,* 96 U. S.—, 24 L. Ed. 681; *Murry v. Lander,* 2 Wall. 110.

T. J. *Wills,* for appellee.

The bonds were issued under and by virtue of the provisions of chapter 176 of the Laws of 1914.   This chapter provides, among other things as follows:   "And such bonds shall not be sold for less than their face value." The twenty-five thousand dollars worth of bonds involved,

and from which these interest coupons were clipped, were sold for twenty-five thousand, one hundred and eighty-seven dollars, when the present worth of the bonds on the date of the sale was twenty-five thousand six hundred and five dollars. The one hundred and eighty-seven dollars represented a premium contracted to be paid on the bonds and if this sum is to be considered a premium, the price for which the bonds were required to be sold on the date of the sale and delivery thereof was twenty-five thousand, seven hundred and ninety-two dollars. The statutes provide that they shall not be sold for less than their face value and the face value of the bonds on the date of the sale was their present worth. The bonds, therefore, were sold for less than their face value, in violation of the provisions of the statutes. In the case of *Smith v. State,* the interest coupons were void and incollectable in the hands of the original purchaser, because the bonds had been sold in violation of the law authorizing their issuance and sale. If the coupons were void in the hands of the original purchaser because the sale was made in violation of the law, they became void as to all purposes and intent, and were void in the hands of an innocent purchaser for value without notice. *Dean v. Robertson,* 64 Miss. 195; *Gray v. Robinson,* 95 Miss. 1.

If the court were to hold that these interest coupons were collectable in the hands of an innocent purchaser for value without notice it would in effect nullify the law. 2 Elliott on Contracts, Par. 675, and the cases cited in note 33.

These bonds and interest coupons are commercial paper, and are subject to all the rules governing the sale and collection of commercial paper. To commercial paper there are two defenses; real defenses and personal defenses. Real defenses, like real actions, are founded upon a right good against the world. They are called real because they attach to the *res*, i. e., the instrument itself, regardless of the merits or demerits of the plaintiff. A

purchaser for value without notice is, therefore, power-less against a real defense.

Personal defenses are founded upon an agreement or conduct of a particular person in regard to an instrument which renders it inequitable for him, although holding the legal title to enforce it against the defendant. They are called personal defenses because they are available only against that person or a subsequent holder who stands in privity with him. Against a purchaser for value without notice, they are inoperative.

The defense interposed in this case was that the bonds were sold for less than their face value, in violation of the law. The sale being in violation of the law, the in-firmity attached to the bonds themselves and the defense, therefore, became a real defense effective against the world. We believe that this contention is correct, and is accepted by the weight of authority, if not by the unani-mous decisions of both the English and American courts. Any other construction of the law would nullify the statutes and make possible the sale of these bonds at less than their face value.. *Bennison v. Jewison,* 12 Jurist 485.

The action of the court, in giving judgment against ap-pellee for the three hundred and thirty-two dollars, was erroneous. The case should be reversed and judgment entered here for appellee, cross appellant.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was the plaintiff in the court below, and filed suit against the board of supervisors and road com-missioners of district No. 2 for interest on a twenty-five thousand dollar bond issue of road district No. 2 for a period from July 1, 1914, to January 1, 1915, amounting to seven hundred and fifty dollars. It appears that the board of supervisors of Smith county for district No. 2 of Smith county, on the 1st of July, 1914, sold an issue of twenty-five thousand dollars of its road bonds for said

district bearing six per cent. interest, payable,semi-annu-
ally on the 1st days of July and January of each year, and
at the July meeting, 1914, J. R. Sutherlin & Co., of Kansas
City, Mo., bid for said bonds the sum of twenty-five thou-
sand one hundred and eighty-seven dollars, depositing its
check for five hundred dollars guaranteeing its compliance
with the terms of the contract, and its agent instructed
the board of supervisors to make up a transcript of the
proceedings certified to showing the regularity of the
bond issue and to draw a draft for the purchase money
upon said Sutherlin & Co. at Kansas City, Mo. There was
some delay in making up the certified transcript but on
the 15th day of August the bonds, transcript of proceed-
ings, and county treasurer's receipt for the money signed
by the county treasurer was forwarded through the bank
with the draft on the Sutherlin Company for the purchase
money of the bonds at Kansas City, Mo. In the meantime
the European war broke out, and the buyer had some diffi-
culty in placing the bonds and paying for them, and the
draft was not paid until the 6th day of October, 1914,
when the buyer paid for ten thousand dollars of the bonds,
and said amount of bonds was delivered to him, and on the
24th day of December, 1914, the buyer paid for the remain-
ing bonds, and they were delivered to him, but it did not
pay the county the accrued interest from July 1st to the
date of the delivery of the bonds; but, notwithstanding
such failure, the bonds were delivered, together with the
certificate of regularity and the county treasurer's receipt,
and on the 27th day of December Sutherlin & Co. sold the
bonds to Weil, Roth & Co., a banking establishment
at Cincinnati, Ohio, which said bank bought for the ac-
count of plaintiff, and plaintiff placed the bonds with cli-
ents of his, and the coupons due January 1, 1915, were
clipped from the bonds and sent to Smith county for pay-
ment, but payment was refused and the coupons were re-
turned to plaintiff, and plaintiff paid for the said coupons,
according to his testimony, which is undisputed in the

record, full value of said coupons. It is in testimony that the purchasers, Weil, Roth & Co., bought from Sutherlin & Co., and were bona fide purchasers without notice of the failure of Sutherlin & Co. to pay the accrued interest, but that they bought on the faith of the transcript of the regularity of the proceedings and the county treasurer's receipt, and had no knowledge of any default on the part of Sutherlin & Co. in complying with its bid. The case was submitted to the circuit judge without a jury, by agreement, and the circuit judge allowed the plaintiff interest on ten thousand dollars from the 6th day of October, 1914, to the 1st day of January, 1915, and interest on fifteen thousand dollars from the 24th day of December, 1914, to January 1, 1915, and denied plaintiff's right to recover for the balance. The question arises as to whether a *bona-fide* purchaser of bonds is entitled to recover on the facts above stated from the county for that period of time from the issue and date of the bonds until the actual payment by the purchaser from the county. The bonds are payable to bearer and we think that, when the bonds are delivered with the receipt of the county treasurer acknowledging payment of the money, and the certificate of regularity as to the issuance of the bonds as above stated, that the county is liable to the *bona-fide* purchaser for value without notice. People dealing with paper of the character involved in this suit, that is, negotiable paper payable to bearer, are entitled to protection when the transcript of proceedings shows that the bonds have been regularly issued, sold, and paid for. The county could refuse to surrender the bonds until they are paid for by the purchaser, being the amount of his bid with accrued interest to date of payment, and the county could recover of the purchaser, if it delivers the bonds without payment, the amount that is still due; and the county in proper cases could recover on the bonds of the county officers charged with the sale of such bonds any loss occasioned by their neglect of duty in requiring the full amount of the pur-

chase money to be paid before delivery, but as to *bona-fide* purchasers for value before maturity without notice the county is liable for the full amount of its bonds and interest thereon when it has delivered bonds to purchasers when they have been sold to innocent parties. It would be destructive of the public credit and work untold injury upon counties where the sale of bonds is necessary, to hold that such purchasers are not protected. *Madison County v. Brown,* 67 Miss. 684, 7 So. 516; *Vicksburg v. Lombard,* 51 Miss. 111; *Cutler v. Madison County,* 56 Miss. 115; *Aberdeen v. Sykes,* 59 Miss. 236.

It follows that the learned circuit judge was in error in refusing to allow the plaintiff the full amount sued for.

Judgment is accordingly reversed, and judgment entered here for the appellant for said amount, with interest at six per cent. thereon from January 1, 1915.

*Reversed, and judgment here.*