**JEFFERSON STANDARD LIFE INS. CO.**
**et al. v. DATTEL.**

**No. 8039.**

Circuit Court of Appeals, Fifth Circuit.

April 22, 1936.

Hugh F. Causey and L. C. Hallam, both of Cleveland, Miss., for appellants.

A. B. Sparkman, of Cleveland, Miss., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Bertie Dattel bought from J. W. Cutrer land mortgaged by him to Jefferson Standard Life Insurance Company, and assumed the mortgage debt as a part of the purchase price. She later contended that under the law of Mississippi, in which state the land lay and the transactions occurred, the mortgage debt was usurious and no interest was due, and that she had overpaid the principal; and in a state court of equity she sued the insurance company to cancel the mortgage as a cloud on her title. The suit was removed to the federal court, where usury was denied, estoppel asserted against Mrs. Dattel to attack the debt she had assumed, and cross-relief prayed by foreclosure of the mortgage. On agreed facts, a decree was rendered finding usury, that Mrs. Dattel had not assumed the usurious interest nor deducted it from the purchase price, and that she could recover such interest as she had paid by offsetting it against the principal assumed by her, and that, having discharged her assumption in this wise and

by · payment into court of a balance, the mortgage be canceled. The insurance company appeals, the main assignments of error being that there was no usury under the state statute as interpreted by the Supreme Court of Mississippi when the mortgage was made and none under changes in the statute and its altered interpretation since, and if there be usury, that Mrs. Dattel assumed the interest notes as well as the principal notes, and is estopped to set up usury, the debtor Cutrer alone having that right.

The main facts are these: On March 20, 1923, Cutrer made the trust deed securing his notes then given for a principal of $7,500, that sum being paid to him. Each principal note recites that it draws interest at 8 per cent. per annum from date payable semiannually until paid, and that interest before maturity is represented by ten interest notes attached and bearing interest from their maturity. The last principal note for $6,000 and the last interest note matured March 20, 1928. The trust deed itself set forth each principal note by amount and date of maturity, and stated that they drew interest from date at 8 per cent. payable semiannually of each year until paid, and that the interest was evidenced by ten interest notes, stating the amount and maturity of each, and that each bore interest after maturity at 8 per cent. payable semiannually. The face of the interest notes aggregated $2,700. On November 8, 1923, Cutrer delivered to Mrs. Dattel his deed conveying the land to her "in consideration of $12000 to be paid by party of the second part, of which amount the sum of $1500 is cash in hand paid * * * the sum of $3000 is evidenced by the thirty promissory notes of the party of the second part to the party of the first part * * * and the remainder of said amount, to-wit, the sum of $7500, is evidenced by that certain deed of trust executed by the party of the first part in favor of Jefferson Standard Life Insurance Company * * * which said sum as evidenced by said deed of trust, together with the interest accrued and accruing thereon, the party of the second part assumes and agrees to pay as and when the same shall become due and payable according to the tenor and effect thereof." The deed also retained a vendor's lien "to secure the payment of the above mentioned purchase money as hereinbefore stated." Cutrer paid the first interest note of $300. Mrs. Dattel paid the others as they fell due through March 20, 1928, amounting to $2,-400, together with $3.75 of interest on one that became overdue. She paid also four principal notes, but the fifth for $6,000, which was due in March, 1928, she by consent of the insurance company began to pay semiannually $200, with 8 per cent. interest paid semiannually. No new notes were taken. After a default in this arrangement, the insurance company was seeking to enforce a power of sale, when this bill was filed.

The case falls into two periods, the first ending March 20, 1928, when the last principal and interest notes matured; the second covering the later time when Mrs. Dattel under some new arrangement was paying the $6,000 principal note. During the first period she was paying as they matured notes which she had assumed to pay as part of the price of her land. She cannot set up usury in them. She stands not as a mere purchaser of property fighting off an incumbrance which she does not owe. The whole point is that she has specially assumed to pay this incumbrance. To show that a court of equity will not aid a purchaser to avoid for usury a definite obligation which he has agreed to pay as a part of the purchase price we need add little to what we said in Norton v. Commerce Trust Co., 71 F.(2d) 136. In confirmation, we find the law thus stated by the Mississippi court: "The authorities seem to be practically uniform in support of the doctrine that a vendee of mortgaged property who assumes and agrees, as a part of the purchase price of the property, to pay a fixed and definite balance due according to the terms and provisions of the mortgage, cannot set up the defense of usury in the mortgage debt. The rule seems to be different, however, where the agreement is to pay 'what was legally due,' or the 'balance due.'" Mortgage Security Corporation v. Hartman, 158 Miss. 535, 130 So. 739, 740. The Mississippi cases relied on by appellee to sustain the thesis that every purchaser of incumbered land may assert usury against the incumbrance are all reconcilable with the rule just quoted. The decision reached in the Hartman Case was that the grantor who made the debt was the proper person to question it for usury, and he being a party before the court, the inquiry might be entertained. This, too, is in accord with the general rule stated by us in the Norton Case, that usury is normally a personal defense to be asserted or waived by the person who borrowed the money. It is distressed borrowers whom usury laws seek to protect

506

from oppression. A purchaser freely agreeing to pay a fixed incumbrance acts from no necessity. What he thus pays is from his standpoint not borrowed money, but purchase money. It is paid to the incumbrancer because the seller has appointed this mode of paying the purchase price. The incumbrancer receives it not as the money of the purchaser, but of his original debtor. Under the Mississippi statute and most others, there is no prohibition against paying a usurious debt if the borrower's notion of honesty and of maintaining his credit leads. him to desire to pay it. If he has bound a purchaser of his property to pay it for him, he has a right to expect performance, and he alone can justly excuse the purchaser. If usury is thus paid, the seller and not the purchaser has the right to recover it. Hough v. Horsey, 36 Md. 181, 11 Am. Rep. 484; 10 R.C.L., Estoppel, § 10; 27 R.C.L., Usury, §§ 83, 89, 91, 92. The only question here is, What did Mrs. Dattel agree to pay?

██ If her assumption had been only of $7,500 and interest, lawful interest might be supposed intended. But it is of $7,500 "as evidenced by said deed of trust together with the interest accrued and accruing thereon * * * according to the tenor and effect thereof." We are of opinion that this direct reference to the deed of trust reads its full statement of the principal and interest notes into the assumption just as though it had been quoted, and binds Mrs. Dattel to pay each note both for principal and for interest as set forth in the deed by date and amount and maturity. We must understand that the maker of these notes wished them all paid, and by this contract bound Mrs. Dattel to pay them according to their tenor and effect. The principal of each note as to her is an installment of the purchase price. He does not join in this attack upon them, and is not a party to this case. If Mrs. Dattel is allowed to have her land free of incumbrance as this decree provides, with all the interest left outstanding against Cutrer, a manifest disregard both of his right to have all his notes paid and of Mrs. Dattel's obligation to pay for the land as she agreed to do has happened. Nothing would hinder the insurance company from suing Cutrer, and the decree in this case will neither bind nor protect him.

 The second period beginning March 20, 1928, when the $6,000 note went unpaid involves other considerations. Mrs. Dattel contends that the interest she paid thereafter was under a new contract between her and the insurance company for forbearance, and not by virtue of her original assumption of the note, and that if usury was received the interest she thus paid is forfeited and may be recovered back by her. The insurance company contends that there was no new binding agreement, but only an indulgence at the rate of interest fixed in the original note. We cannot tell from the meager facts agreed on which is right. No new notes were taken. The 8 per cent. interest paid semiannually and to draw interest if overdue was that fixed in the old note. The semiannual payments of $200 on principal was a liquidation which it is said the insurance company "consented to permit." Whether Mrs. Dattel bound herself to the insurance company by any new agreement, whether Cutrer was released, whether he consented, what new consideration existed on either side is not stated. And no argument or authority has been presented on the question whether Mrs. Dattel's estoppel to assert usury would continue in either case. A majority of the court are of opinion that since no novation appears, her estoppel continues until she has paid the $6,000 note. The writer is of opinion that if, after failing to pay the note when due, she was indulged at her request, though without a novation, and usury was exacted for the indulgence, she can take advantage of it. But I am further of opinion that no usury appears. The Mississippi statute defining usury provides that "if a greater rate of interest than eight per centum shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory." Code of 1930, § 1946. It is usually held when no interest is taken in advance, that proportionate interest may be made payable as earned in periods less than a year, since thereby the rate per annum is not increased. Myer v. City of Muscatine, 1 Wall. 384, 17 L.Ed. 564; 66 C.J., Usury, § 113; note, 29 A.L.R. p. 1112. Compounding interest is not generally held usury because avoidable by prompt payment. 66 C.J., Usury, § 141; note, 37 A.L.R. p. 335. By decisions made before 1923 in Cutler v. Board of Supervisors, 56 Miss. 115, Palm v. Fancher, 93 Miss. 785, 48 So. 818, 33 L.R.A.(N.S.) 295, and Merchants' & Planters' Bank v. Caston, 97 Miss. 309, 52 So. 633, the Mississippi court had sanctioned interest at the rate of

8 per centum per annum for periods less than a year although interest was chargeable on the interest if not paid. In June, 1924, the court by an even division of three justices against three sustained a lower court in holding to be usurious a charge of four per cent. semiannual interest, with interest on the interest if not paid, as being a contract to pay more than eight per cent. per annum. Rogers v. Rivers, 135 Miss. 756, 100 So. 385, 37 A.L.R. 313. The case was cited as authority in Jefferson Standard Life Ins. Co. v. Todd (Miss.) 151 So. 723, and Jefferson Standard Life Ins. Co. v. Davis, 173 Miss. 854, 163 So. 506, only three justices sitting. Apparently there was dissatisfaction with the ruling in Rogers v. Rivers, for the Code of 1930, § 1951, in the chapter on interest and usury, made this new provision: "When any particular rate of interest per annum is specified in any contract or evidence of indebtedness it shall not be construed as any increase of said rate merely that the interest at the specified rate per annum is stipulated to be paid quarterly, or semi-annually, or at any other period less than a year, nor shall the fact that the principal and interest is paid at a date earlier than that stipulated in the contract or evidence of indebtedness be taken as any increase of the rate per centum although paid for the whole period stipulated." The first quoted clause cuts away the ground on which the conclusion in Rogers v. Rivers rested. It was evidently intended as an amendment of the usury law, and notwithstanding its use of the expression "shall be construed," it may be given effect as legislation rather than condemned as an invasion of the judicial sphere. Stockdale v. Atlantic Ins. Co., 20 Wall. 323, 22 L.Ed. 348; Cooley, Const. Lim. (8th Ed.) p. 192. Its effect is, as a declaratory or curative statute, retroactively to prevent the forfeiture of interest supposed to be incurred by contracting under the circumstances stated. A defense of or a forfeiture because of usury is not a vested right so long as it has not been established by judgment; so that usury laws can constitutionally be altered retroactively. Petterson v. Berry (C.C.A.) 125 F. 902; Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682; Cooley, Const. Lim. (8th Ed.) p. 781; 66 C.J., Usury, §§ 54, 55. The Mississippi Code of 1930, § 4, saves former rights in case of a repeal, but it does not appear to deal with curative statutes. Moreover, the ruling in Rogers v. Rivers is not an authoritative construction of the original usury statute which a federal court is bound to follow. An affirmance by an equally divided court was over a strong dissent, said to be a binding precedent by the Supreme Court of Mississippi in affirming another case where the court remained equally divided. Robertson v. Mississippi Valley Co., 120 Miss. 159, 81 So. 799. In most other states and in the federal courts such a decision determines the particular case, but has no authority as a precedent. Hertz, Collector, v. Woodman, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001. In the later Davis Case, supra, usury was conceded and not decided. In the Todd Case Rogers v. Rivers was followed as a precedent, but the court refused to consider its soundness because of the change in the law made by the Code of 1930, § 1951. This federal court is not confronted with a settled construction of the original statute or of the amendment of 1930, and is justified in holding in accordance with the general view that interest at 4 per cent. semiannually is not a higher rate than 8 per cent. per annum, though to be compounded if not paid when due. Judge FOSTER concurs in the view that there is no usury shown. Judge HUTCHESON thinks the question unnecessary to be decided. All agree that Mrs. Dattel is not entitled to recover any interest paid, and that there is no obstacle shown to a foreclosure on the cross-bill. The judgment is therefore reversed, and the cause remanded, with direction to enter a decree of foreclosure.