DANIEL C. POUNS et al. *vs.* GARTMAN and PENDLETON,
Administrators, &c.

Where A. sold certain land to B., and soon thereafter B. died, leaving a por-
tion of the purchase-money unpaid, and A. and C. administered on B.'s
estate, whose heirs were anxious to release his personal estate from the pay-
ment of the balance of the purchase-money due A., an arrangement was
made by which the tract of land was sold to D., who assumed the payment
of the balance of the purchase-money due from B. to A., the heirs of B.
who were of age consenting to the sale; and D. having executed his
notes to A. for the land, one of them was sued upon and judgment recov-
ered, which is now sought to be enforced against the land by a bill in chan-
cery. Some time after the sale of the land to D. by A., the heirs of B. filed
their bill against him, (D.,) alleging that the sale of the land to him by A.
was void, and praying that the sale be cancelled, and the title to the land be
vested in them, the heirs of B., which was decreed accordingly. *Held*, that
the sale of the land by A. to D., may be insufficient to pass any legal title to
him, or divest the title of B.'s heirs, but it did not in any manner affect A.'s
lien upon the land for the unpaid purchase-money.

A decree only binds those who are parties or privies to the suit.

Notice given to a non-resident by an "administrator or executor," without de-
scribing or naming the person of whose estate he is administrator or execu-
tor, is a sufficient notice.

Where only one of several codefendants takes an appeal, who was regularly
served with notice, he may still take advantage of a want of service of pro-
cess on a codefendant who does not appeal:— *Held*, that the process is part
of the record, and if it does not appear to have been served on the party,
or notice be not given according to law, the recital in the decree that notice
was given, will not be sufficient.

ON appeal from the southern district chancery court at
Monticello; Hon. James M. Smiley, vice-chancellor.

This was a bill filed in the vice-chancery court at Monticello,
by the heirs of Joseph Pouns, and the bill charges as follows:—
On the 14th March, 1842, Z. E. Pendleton departed this life,
intestate, leaving no children, but complainant, E. C. Pendle-
ton, his widow. The said widow and Samuel Prestridge ob-
tained letters of administration, and acted as such until 1845,
when Prestridge died. At the August term, 1845, complain-
ants were appointed administrators, &c.

That Z. E. Pendleton and wife in his lifetime, on the 11th September, 1837, sold and conveyed by deed of general warranty, a tract of land of five hundred and seventy-seven acres, to Joseph Pouns, who went into possession of the same immediately, and continued in possession until July, 1838, when he died.

That the purchase-money agreed to be paid by Pouns was $4,044, and Pouns gave his three notes for $1,348 each, payable in one, two, and three years; said notes made payable to Z. E. Pendleton or bearer. That said Pouns gave no other security or indorsers on said notes, and no other security for the purchase-money of the land, and the same were unpaid at the time of his death.

That said Z. E. Pendleton, and Samuel J. Pouns, a son of Pouns, administered on the estate of Joseph Pouns, in part, and were succeeded by D. C. Pouns, administrator *de bonis non.* Joseph Pouns, when he died, left a widow and others heirs, some of whom were minors; and the personal estate of said Pouns was appraised at about $5,256, and was so returned into court by his administrators. But the personal estate never came into the hands of Z. E. Pendleton, administrator, &c., but the same was retained in the hands of the widow and heirs of the deceased, of whom S. J. Pouns was one, and it was never sold.

By the death of Joseph Pouns, the land sold to him by Pendleton, descended to his heirs, subject to the widow's dower, and Pendleton's lien for the purchase-money, of which he had paid but $300. The widow and heirs and the guardians of the minor heirs, in order to pay the purchase-money due Pendleton for the land, requested Henry Sones to buy the land, or requested Pendleton to sell it to him, which was done. Sones covenanted and agreed to pay to Pendleton $3,900, the balance due him upon the original sale of the land to P., who executed S. a deed for the land.

The bill prayed that the case be subjected to the vendor's lien for the purchase-money, which was decreed by the court; and an appeal was taken to this court.

*John C. Freeman,* for appellants.

Judgment without service of process is void. *Ayer* v. *Barley,* 5 How. 688; *Prentiss* v. *Mellen,* 1 S. & M. 521; *Graves* v. *Williams,* 2 Ib. 286. A joint judgment bad as to one, is bad as to all. *Pittman* v. *Planters Bank,* 1 How. 527.

The record shows that there was no guardian *ad litem* appointed for Sarah Pouns, and yet a final decree was taken against her as a minor. See Hutch. Code, 761. There was also a decree taken against Daniel C. Pouns as guardian *ad litem* of Sarah Pouns, when said guardian was not a party to the suit.

It does not appear by this notice of whose estate Gartman and Pendleton are administrators, nor does it appear who are the heirs of Joseph Pouns, so that the parties, plaintiff and defendant, are not described, and the non-resident defendants could not tell what suit to defend.

They had no notice that Gartman and Pendleton were administrators of Z. E. Pendleton, deceased, nor who were the parties defendant under the style of the "heirs of Joseph Pouns, deceased." Who was Joseph Pouns? where did he live? when and where did he die? and what are the names of his heirs sued in this suit? There was, therefore, no notice to the non-resident parties, and the decree is void as to them also. Besides, publication to non-residents is a part of the process of the court; its style must be "The State of Mississippi," Code, 385. This publication has no style at all.

The bill does not exhibit the notes said to have been given by Pouns to Pendleton for the purchase of the land; but the bill admits that Sones's note for $1,600, or thereabouts, and the payment of the balance of $3,900 by Sones, and the payment of $300 by Pouns in his lifetime, was taken by Pendleton in lieu of the original notes; so that said original notes have been paid, and the vendor's lien for the same abandoned and relinquished. *Clower* v. *Rawlings,* 9 S. & M. 122.

*J. F. Foute,* for appellees.

Mr. Justice FISHER delivered the opinion of the court.

Pouns et al. *v.* Gartman and Pendleton.

The appellees as administrator and administratrix of the estate of Z. Pendleton, deceased, filed this bill in the vice-chancery court holden at Monticello, against the heirs at law of Joseph Pouns, deceased, and one Henry Sones, to enforce the vendor's lien for the unpaid purchase-money, due on account of a tract of land, sold by the said Pendleton in his lifetime to Joseph Pouns.

The defendants below, who had been served with process, and otherwise legally notified of the pendency of the suit, appeared and filed a demurrer to the bill, which was by the court overruled ; the defendants afterwards failing to answer the allegations of the bill, a *pro confesso* was entered, and a decree pronounced for the complainants for the amount of their claim, and ordering the land to be sold for the purpose of satisfying the decree.

The facts, though voluminous as stated in the bill, may be summed up briefly as follows : Pendleton sold the land to Pouns on the 11th September, 1837, for the sum of $4,044.25. Pouns soon thereafter died, leaving about $3,900 unpaid. Pendleton and Samuel J. Pouns administered on Joseph Pouns's estate, whose heirs were anxious to relieve his personal estate from the payment of the balance of the purchase-money due to Pendleton.  An arrangement was accordingly made, by which the tract of land was sold to Henry Sones, who assumed the payment of the balance of the money due from Pouns's estate to Pendleton, the heirs of Pouns, who were of age, consenting to this sale.  Sones having executed his notes to Pendleton, one of them was sued upon in the circuit court of Lawrence county, and judgment recovered thereon by Pendleton's administrators, which judgment is the claim now sought to be enforced by the bill against the land.

It is insisted that by this arrangement, the notes originally given by Joseph Pouns to Pendleton were discharged, and the land released from the lien which attached on the sale to Pouns, for their payment.  Hence it is to be inferred from the position assumed by counsel, that the present claim can only be enforced against such interest as Sones may have in the land, and not against the interest of the heirs of Pouns.  The

general correctness of this position cannot, of course, be questioned. But we apprehend that it will be found to have but little if any application to the facts of this case.

Some time after the sale to Sones, the heirs of Pouns filed their bill against him, alleging that the sale of the land to him by Pendleton was null and void, and praying that the said contract might be cancelled, and the title to the land revested in the said heirs. The vice-chancellor, upon the hearing of the cause, which stood upon *pro confesso* as to Sones, and upon an answer as to the heirs of Pendleton, decreed according to the prayer of the bill, declaring the sale of the land by Pendleton to Sones to be void, and that the heirs of Pouns should recover the land.

This is briefly the case now before us for consideration, and we perceive no difficulty in disposing of it, according to well-settled rules of equity jurisprudence. It must be borne in mind, that Pendleton's lien on the land was in full force at the date of the sale to Sones, who became his, Pendleton's, debtor, in lieu of the heirs of Pouns, who though holding then the legal title to the land, held it, nevertheless, subject to Pendleton's vendor's lien, which was never in fact released as to the land, but attached to it in the hands of Sones, the subpurchaser, just as it had existed on it, while in the hands of the heirs of Pouns, in virtue of their legal title, derived from the deed of Pendleton to their ancestor, Joseph Pouns, and by descent from him.

If their land was illegally and fraudulently sold to Sones, and he in consequence thereof acquired no title, they of course cannot object to discharging those obligations, entered into by Sones, for the purpose of discharging the lien, which a court of equity treats as superior to their legal title, and for the purpose of discharging which lien, a court of equity would long since, in a proper case, have subjected the land, if no sale had been made to Sones. If he acquired no title under the sale, which they allege to be void, they cannot insist that he should pay their debt to Pendleton, no more than they could if he had contracted to pay the same amount directly to the heirs of Pouns, in consideration of the void sale of the land. When

12* .

they. say to Sones that he purchased under a void contract made with Pendleton, and therefore demand a surrender of the land that they may continue to enjoy it in virtue of their legal title, a court of equity will hold them as offering to discharge the obligations assumed by Sones to Pendleton on account of the lien, which bound the land both before and after the sale. They occupy no better position than they did before the land was sold by Pendleton.   His sale may have been insufficient to pass their legal title to the purchaser, but did not in any manner affect his lien for the unpaid purchase-money.

The complainants were not parties to the bill filed by the heirs of Pouns against the heirs of Pendleton and Sones, and are, therefore, in no manner bound by the decree in that cause.

If the complainants had been parties they could, under the state of facts in this case, by their cross-bill, have set up and enforced their lien against the heirs of Pouns and Sones, and have enabled the chancellor to have done justice to all parties.

But this was the fault of the complainants in that bill; the proper parties not having been made, the decree binds those only who were parties or privies.

· It is next objected, that the notice given to those of the defendants who are non-residents by publication, is void for want of sufficient certainty.   The complainants are described as " adm'r. and adm'x.," without naming the person of whose estate they are administrator and administratrix.   We think this sufficient.   The notice was definite and certain as to the defendants, and they were informed thereby that they were required to appear at a certain term of the court to answer the bill.

Again, it is said that there was no service of process on some of the defendants who reside in Copiah county, and that the decree is, therefore, erroneous.   We think this objection well taken, and that the decree for this error alone must be reversed. It is true that the appeal is prosecuted only by one of the defendants, who was regularly served with process ; but we are clearly of opinion that under the facts of this case he may take advantage of a want of service of process on a codefendant.

The defendants are not jointly and severally liable for the amount of the decree, but are only liable as heirs, each accord-

ing to his interest in the land of the ancestor. Complainants have no right to resort to the interest of five of the heirs and make their land pay the whole decree, and exempt the land of the others from liability. They must all contribute ratably, one as much as another. The rule would, doubtless, be different if the heirs were jointly and severally liable for the whole decree. If the land of any one be released, or not made liable, a corresponding amount of the decree ought also to be released; as, for instance, if there be eight shares, represented by eight heirs, and only five of them be made liable, the complainants could only sell enough of the land to pay five eighths of their decree, and would be compelled to resort to other shares for the balance.

It is, however, said that the decree recites notice and service of process on the parties. This recital must be controlled by the facts as they appear from the record. The process is part of the record, and if it do not appear to have been served on the parties, or notice to have been given according to law by publication, the recital in the decree will not be sufficient, as the law has appointed no other mode of giving notice to defendants.

The objection taken, that nothing appears showing the appointment of a guardian *ad litem* to the minor defendants, can be obviated by having the appointment made in the court below, upon remanding the cause.

Decree reversed, and cause remanded.