### EDWARD H. LOMBARD *v*. JOHN S. LOMBARD.

1. WIDOW.   *Dower.   Collateral heirs.*
   The widow of a childless intestate is, under Code 1871, entitled to but half his estate. CAMPBELL, J., dissented.   *Gibbons* v. *Brittenum*, 56 Miss. 232, followed.

2. STARE DECISIS.   *Vested rights.*
   Where rights have become vested from transactions under the law, as settled by former decisions, the court should depart therefrom, only in case of clear necessity and positive conviction of error.

3. SAME.   *Decision by two judges against one.   New judges.*
   Conflicting provisions of Code 1871 having been after full arguments construed by a divided court of three judges, GEORGE, C. J., succeed- ing one of the majority, declined to reopen the question, although presented in a new case, while the two remaining judges adhered to their diverse opinions.

ERROR to the Circuit Court of Warren County.

Hon. UPTON M. YOUNG, Judge.

*T. C. Catchings*, for the plaintiff in error, filed a brief and made an oral argument.

The question presented here was passed on in *Gibbons* v. *Brittenum*, 56 Miss. 232, which the lower court followed, and this case is brought up to obtain, if possible, a different an- nouncement of the law.   Subsequent legislation renders the rule inapplicable, except as to estates of persons who pre- viously died.   Hence the reasons on which the doctrine of

*stare decisis* is founded have no application here, and the court is at liberty to overthrow its former ruling, if it shall be found that it was made upon an erroneous conception of the law. Full effect can be given to the various provisions of the Code, pertinent to the questions involved, because no inconsistency exists; or, if any, the widow can elect under which statute she will take.

The several statutes being adopted together must be considered together, and any construction which will sustain them all must be given. If inconsistent in part, they must be sustained in a modified form. Failing to maintain them all, it may be admissible to regard the latter as modifying those first adopted, which will be upheld as modified. Sect. 1788 was inserted by the legislature which deliberated on the subject, rejecting in part the scheme presented by the codifiers, and substituting a complete one of its own as to dower, with the purpose not of decreasing the widow's rights, but of making them greater. The effect of the decision in *Gibbons* v. *Brittenum, ubi supra,* is to defeat that intention, and to lay down a rule which can only create confusion; as, for instance, classes of property not included in § 1281 are embraced in § 1788. If, as decided, the former repeals the latter, as to property of which the husband " died seised " the widow takes half, but as to other property she takes all. Under § 1788, the whole estate is subject to debts, and a voluntary conveyance defeats the widow; but § 1281 secures her one-third of the estate, notwithstanding the husband's liabilities or voluntary deed. The two sections do not conflict, but may stand together, each performing an important function. If, however, the sections are irreconcilable, the widow, having two inconsistent rights, must make her election. *Robertson* v. *Stevens,* 1 Ired. Eq. 247 ; *Johnson* v. *Smith,* 1 Ves. 314 ; *Pugh* v. *Smith,* 2 Atk. 43 ; *Morris* v. *Barroughs,* 1 Atk. 399 ; Bouvier's Law Dic., title, " Election." She can take, under § 1788, all her husband's property subject to his debts, or, under § 1281, a liberal dower.

*Frank Johnston,* on the same side, argued orally, and filed a brief.

Sects. 1281 and 1788, Code 1871, can both stand. They relate to different subjects, and have in many cases distinct

operations. Although § 1281 provides for a moiety in fee, it is none the less an estate held by the tenure of dower. 2 Black. Com. 129 ; 4 Kent Com. 37 ; 1 Bish. on Married Women, § 243 ; *Bridgeforth* v. *Maxwell*, 42 Miss. 743. It has been so held under like statutes in Florida, *Smith* v. *Hines*, 10 Fla. 258 ; in Missouri, *McLaughlin* v. *McLaughlin*, 16 Mo. 242 ; in Illinois, *Boyles* v. *McMurphy*, 55 Ill. 236; and in Iowa, *Barnes* v. *Gay*, 7 Clarke, 26 ; *Burke* v. *Barron*, 8 Clarke, 132 ; *Cain* v. *Cain*, 23 Iowa, 31. By the express terms of that section, the dower estate would attach in all lands which had been fraudulently conveyed or alienated by voluntary conveyances of the husband. Such lands would not descend under § 1788. Under § 1281, the widow would take an estate only in such property as she would have had dower in at common law. The will of the husband would defeat her estate under § 1788, while she could take at her election under § 1281. It is equally clear that § 1788 gives her property, in which she could not have had dower at common law, as, for instance, leaseholds and reversions. Sect. 1281 was intended only to give the widow so much as her *dower*, and not to declare that she shall take no other estate by any other tenure or right. It affirmatively gives her dower, and is silent as to the inheritance. Moreover, it has no relation to any statute of descent and distribution. The residuum of the decedent's estate, after the dower has been ascertained, is governed by §§ 1788 and 1948.

The legislature, by § 1281, clearly intended to confer affirmatively some benefit upon the widow. It was not designed to injure her. And yet this court has decided in *Gibbons* v. *Brittenum*, 56 Miss. 232, that its only effect was to deprive her of all the benefits of § 1788. The same theory of construction, and the same process of reasoning, adopted in that decision, would repeal all that part of the section which gives her one-third of the lands for life. The Code of 1871, as originally submitted to the legislature, did not contain § 1281, or § 1282, relating to dower. On the contrary § 1788 was the only provision made for the widow, and it contained also an express clause *abolishing dower*. The legislature, however, accepting § 1788, re-enacted § 1281, and declared that she

should have all the benefits of the dower statute. This was plainly a declaration that she should have not only what the original Code proposed to give her, but also the benefits of § 1281 ; and there was, evidently, no intention to repeal § 1788 by the addition of § 1281. An affirmative statute does not repeal the prior law in relation to the same matter. 2 Potter's Dwarris, 74 ; *Birmingham* v. *Birmingham*, 53 Miss. 610.

This purpose of the legislature ought not to be defeated by the court, upon any technical rules of repeal. On the contrary, all technical methods should be used, if necessary, to give effect to what is manifestly the legislative will. There is no inconsistency between the sections which should destroy either. One treats of dower, the other of the general course of descent. Each, in a great variety of cases, has a distinct application. They create estates by different tenures. In a few cases, each creates an estate in the same land ; but this does not repeal either. *Peyton* v. *Jeffries*, 50 Ill. 143 ; *Ringhouse* v. *Keever*, 49 Ill. 470 ; *Bresee* v. *Stiles*, 22 Wis. 120. The widow could claim under both, or elect to claim under either. It is impossible, on any sound rule of construction, that she can lose the larger estate. *Tyson* v. *Postlethwaite*, 13 Ill. 727.

*Smith & Klein*, for the defendant in error, cited *Gibbons* v. *Brittenum*, 56 Miss. 232.

GEORGE, C. J., delivered the opinion of the court.

We are now asked to review and overrule the case of *Gibbons* v. *Brittenum*, 56 Miss. 232, decided at the April Term, 1878, in which a majority of this Court held that, under the provisions of the Code of 1871, the widow of a person dying intestate, and without children or descendants of them, was entitled to one-half only of the estate of her deceased husband. That case was argued twice at the bar, and in the last argument the judges remained of the opinion entertained on the first argument. Chief Justice Simrall, who was one of the majority of the court, having retired from the bench, the present case is brought up, presenting again the identical question involved and decided in the case above mentioned; and, on an elaborate and learned argument in opposition to the former ruling, Justices Chalmers and Campbell each adhere

to his former opinion.   It is thus left to me, if the question be regarded as unsettled, to say whether, by concurring with Judge Chalmers, the former ruling shall be upheld, or, by concurring with Judge Campbell, it shall be overruled.   The case of *Gibbons* v. *Brittenum, ubi supra,* on both the original hearing and the rehearing was argued with great ability by the counsel on both sides.   It was twice considered by the court; and that this consideration was careful and painstaking is shown by the three opinions read, one being prepared by each judge.   It is thus sharply presented to my consideration whether I shall give my assent to the overruling of a decision made by the court upon full argument at the bar, and on the gravest and most mature deliberation by the judges, merely because I may happen to differ from my predecessor as to the correctness of the former ruling.   I cannot consent to do this, when the question involved is like the one now in controversy.

That the former decision was made by a divided court rather increases than diminishes the duty to adhere to it, when a departure from it must result alone from my non-concurrence in the views of my predecessor, the other two judges participating in the former judgment adhering to the opinions then formed and expressed by them.   Moreover, a majority of this court are invested by the Constitution with all the powers which can be exercised by a full bench.   This Court has no distinct substantive power to declare a rule of law. It has power to render judgments, and, as an incident to this power, may, in the exercise of it, declare a rule, which becomes a precedent for similar cases.   The power of a majority to render judgments is as ample as is that of the full bench; and necessarily the incidental power of declaring the rule which governs the case must exist also.   How much a division among the judges shall detract from the force and authority of the decision as a precedent, it is difficult to define. That a subsequent full bench, all concurring in the impropriety of the first ruling, would depart from it with less hesitancy in cases where a departure is allowable than they would over-rule a unanimous decision, is probable.   But this does not help the difficulty here; for, if the former decision be over-

ruled, it will be by a majority only, one judge being thoroughly convinced that it is correct. And so, if a ruling by a majority is not to be regarded as settling the law, the overruling of that decision by a mere majority will leave the law in that state of doubt and uncertainty, which is worse than a concededly wrong settlement of it.

The decision we are asked to overrule announces a rule of property; and, though but recently made, it is old enough for persons to have acted on the faith of it. Even at this early day, I should hesitate to disturb it, even if we all agreed that it was clearly erroneous. But the question involved is a very doubtful one. This is evident from the division among the judges, and the different opinions entertained by the bar. I have given it my best consideration, and I cannot say that I am convinced that the former decision is erroneous. The question in its very nature presents inherent difficulties, the extracting of a certain legislative intent from repugnant provisions in a code of laws which went into operation *uno flatu*, and which was prepared for the express purpose of furnishing a body of laws for the people, containing nothing but operative provisions.

Considering the difficulty of the question, and the tenacity with which the late Chief Justice and the Associate Justices adhered on the second argument, each to his opinion as expressed on the first argument; and considering, further, that each of the two judges now on the bench, who participated in that decision, is unshaken in the conclusion he then reached, it would appear that the diverse views so entertained must have resulted in a large degree from the peculiar intellectualism of the judges; and, if I were to form an opinion, it would be reached in the same way. For it seems to be a question incapable of settlement by reasoning, else it is certain that the learned and able arguments at the bar, and the equally able and learned discussion by the judges, would have brought them into unanimity.

It would be a great evil if questions once settled on full argument and mature deliberation were subject to be reopened and decided differently upon every change in the members of this court, and consequent changes in the temper and

mental organism of the judges.   Settled rules, so far as they re-
late to rights of property, on which the people may repose with
confidence and security, are essential to the welfare of society.
It is impossible to lay down any precise rule, which governs
inflexibly a court of last resort, in adhering to or departing
from a former decision.   It is safe, however, to say that the
rule of *stare decisis*, so far as it relates to decisions of this court,
should not be disregarded, except on the fullest conviction that
the law has been settled wrong ; and even then it is better to
leave the correction to the legislature in all cases where a de-
parture from it would have the effect to disturb vested rights,
resulting from transactions entered into under the law as
settled.   In such cases, a departure from former rulings should
never take place except upon the clearest necessity and the
most assured conviction that the former ruling was erroneous.
I do not see this necessity here, nor have I that assured con-
viction.

Speaking for myself alone, I would say that on constitutional
questions, where the former decision refused a right reserved
to individuals as against the power of the government, or
where it impaired the powers of the people or their represen-
tatives to prevent maladministration by their officers and
agents, or sanctioned an alienation by the legislature of powers
conferred for the public good, I should feel little hesitation in
departing from it when satisfied of its incorrectness.

The judgment of the court below, being in accordance with
the rule laid down in *Gibbons* v. *Brittenum, ubi supra,* is

*Affirmed.*