Bank of Philadelphia *et al. v.* Posey, Sheriff, *et al.*

[92 South. 840, En Banc, No. 22247.]

1. Partnership. *Judgment against partnership is against each of designated members.*

A judgment that the plaintiff "recover from the defendants, Brantley Bros., a late firm composed of Z. A. Brantley and Jones Brantley,"

etc., is not void as being against the partnership only, but is against each of the designated members thereof.

2. JUDGMENT. *Not valid as to codefendants not served with process.*

A judgment against all of several codefendants, some of whom were not served with process and did not submit themselves to the jurisdiction of the court, is void as to the defendants not served with process, but under section 4944, Code 1906 (Hemingway's Code, section 3220), is valid against the defendants of whom the court had acquired jurisdiction.

3. SUBROGATION. *Lender of money entitled to subrogation to lien of canceled mortgage, where money used in paying debt secured by mortgage.*

In order that a lender of money may be entitled to be subrogated to the lien of a mortgage that has been canceled the money borrowed from him must have been used in paying the debt secured by the mortgage, and under an express or implied agreement that he shall be subrogated to the rights of the mortgagee.

4. HOMESTEAD. *Exemption of homestead acquired by occupation after execution, but before sale, does not confer right to convey land not his homestead, free from lien.*

The right of the head of a family to prevent the sale of land owned by him but not his homestead, under an execution issued on a judgment against him, by moving on and occupying the land as a homestead before the sale, does not confer on him the right to convey land not his homestead, free from the lien of a judgment then existing against him.

5. INJUNCTION. *Allowance of attorney's fees for defending whole case where bill is dismissed and injunction dissolved not error.*

When on final hearing a bill is dismissed and an injunction *pendente lite* granted the complainant is dissolved in a suit in equity, where the only relief sought by the complainant is an injunction, and the dissolution of the temporary injunction involves also the dismissal of the bill, the defendant is entitled to attorney's fees incurred in defending the whole case.

ETHRIDGE, J., dissenting.

APPEAL from chancery court of Neshoba county.

HON. T. P. GUYTON, Chancellor.

Suit by the Bank of Philadelphia and others against M. C. Posey, Sheriff, and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Note: The judgment in this case reversed on suggestion of error: See 95 So. 134, 130 Miss. —.

*Green & Green* and *Z. A. Brantley,* for appellant.

*F. V. Brahan* and *G. G. Lyell,* for appellee.

SMITH, C. J., delivered the opinion of the court.

In 1907 a judgment was rendered by the circuit court of Neshoba county that the Milburn Wagon Company, a corporation, "do have of and recover from the defendants, the Brantley Bros., a firm composed of Z. A. Brantley, J. R. Brantley, and Jones Brantley," etc., and before it became barred by limitation an action at law was begun thereon against Z. A. Brantley and Jones Brantley, in which a judgment by default was rendered in February, 1915, that the Milburn Wagon Company, a corporation, "recover from the defendants, Brantley Bros., a late firm composed of Z. A. Brantley and Jones Brantley," etc. On May 17, 1920, an execution was issued on the second judgment and levied on certain land owned by J. R. Brantley, and on which the Bank of Philadelphia holds a deed of trust executed to it by J. R. Brantley to secure a debt due it by him. After the levy of the execution the Bank of Philadelphia and J. R. Brantley exhibited an original bill in the court below against the sheriff, Posey, and the Milburn Wagon Company, alleging, in substance:

That Z. A. Brantley was not served with process to appear and defend either of the actions in which the judgments were rendered; that the land was purchased by Jones Brantley from J. J. Hardage in February, 1918, who "after the conveyance of" the land to him, but on the same day that he purchased it, executed a deed of trust thereon to the Citizens' Bank of Philadelphia to secure an indebtedness to it; that on the 8th day of January, 1920, Jones Brantley conveyed the land to J. R. Brantley, who on the 20th day of December, 1920, executed a deed of trust thereon to the Bank of Philadelphia to secure an indebtedness due it by him; that both of these deeds of trust were given "to secure the payment of the purchase money on said lands purchased as aforesaid from J. J. Hardage and wife

by the said Jones Brantley, and each and every renewal of the original trust deed at the time of the purchase of said land were renewals of the said trust deed given on the date of the purchase of said property, and that each and every one of the foregoing trust deeds or mortgages are duly recorded, as is shown by exhibits hereto attached, and the defendant the Milburn Wagon Company is now estopped from setting up any claim to said lands, and the complainants now and here plead the doctrine of estoppel as a bar to any claim against said lands in addition to any and all claim against said lands in addition to any and all other defense they have against the defendant in said suit; . . . that the said Jones Brantley did not put one cent of money in the lands involved in the litigation at the time of the execution of the said deed on the 15th day of February, 1918, by J. J. Hardage and wife to the said Jones Brantley on the 8th day of January, 1920, but charge the truth to be that the purchase money for said lands was advanced by the complainants, the Bank of Philadelphia and J. R. Brantley, as aforesaid."

How the deed of trust executed to the Bank of Philadelphia can be a renewal of the one executed to the Citizens' Bank of Philadelphia, a separate and distinct bank, is not set forth, nor does it appear from any allegation of the bill how, when, to whom, or under what circumstances the Bank of Philadelphia and J. R. Brantley paid the purchase money of the land. The bill prays for a temporary injunction, which was granted, restraining the defendants thereto from selling the land under the execution; that on final hearing the injunction be made perpetual, and "for such other, further, and general relief as they may be entitled to under the law and the facts." By amendment thereto the bill was made to charge that the land was purchased by Jones Brantley for a homestead, and was being used as such by him at the time he sold it to J. R. Brantley.

It does not appear either from the bill, answer, or the evidence whether J. R. Brantley joined in the plea to the declaration on which the first judgment hereinbefore referred to was rendered.

It appears from the evidence that Z. A. Brantley was not served with process in either of the actions in which the judgments hereinbefore were rendered; that the deed from Hardage to the land was delivered to Jones Brantley in the office of the Citizens' Bank of Philadelphia, and that at the same time and as a part of the same transaction he delivered to the bank the deed of trust executed by him to the bank to secure the money borrowed from it with which to pay for the land; that Jones Brantley has never lived on the land, but lived in the town of Philadelphia, several miles therefrom; that the deed of trust given to the Citizens' Bank of Philadelphia by Jones Brantley was paid off by J. R. Brantley and canceled of record, but when and under what circumstances it was paid off by him does not appear. It does not appear from the evidence what connection, if any, exists between the deed of trust executed by J. R. Brantley to the Bank of Philadelphia and the payment by him of the deed of trust executed by Jones Brantley to the Citizens' Bank of Philadelphia.

The cause was submitted on bill, answer, and proof, was taken under advisement by the chancellor, and a decree was rendered by him at the next term of the court, dissolving the temporary injunction, dismissing the bill of complaint, and allowing the defendants an attorney's fee of four hundred dollars, from which the complainants have appealed to this court.

At the term of the court succeeding the term at which the cause was submitted and before the decree was rendered the court overruled a motion made by the complainants that the case be remanded to rules and they be permitted to amend their bill of complaint as follows:

"The complainants pray that the Citizens' Bank of Philadelphia, Miss., be made a party defendant in this case, and they charge that the complainant Bank of Philadelphia took up and paid off the trust deed held by the said Citizens' Bank against Jones Brantley covering the lands involved in this suit, and that the trust deed held by the Citizens' Bank was for purchase money advanced by the

said bank in the payment of the land here involved, and that the Citizens' Bank therefore held a prior lien on said land, and that when the Bank of Philadelphia took up said trust deed held by the Citizens' Bank, at the request of Jones Brantley and J. R. Brantley, and by and with the consent of the said Citizens' Bank the complainant Bank of Philadelphia was subrogated to all rights or interest in said land that were held by the said Citizens' Bank.

"They would show to the court that the copy of the trust deed given by Jones Brantley to the Citizens' Bank to secure the purchase money of the lands here involved is made an exhibit to the original bill filed herein, as is also the trust deed given by J. R. Brantley to the Bank of Philadelphia, and the said trust deeds show that on the same day and date that the trust deed held by the Citizens' Bank was paid the trust deed from J. R. Brantley to the Bank of Philadelphia was given, and they charge the truth to be that the money for which the trust deed was given by J. R. Brantley to the Bank of Philadelphia was paid over to the Citizens' Bank for the trust deed held by them for the purchase money of said land. They therefore pray that the Bank of Philadelphia be subrogated to all rights or interest that the Citizens' Bank held by virtue of their trust deed for the purchase money of the lands here involved, and that in the event the court should hold that the judgment upon the execution in this case was issued is not void, then the complainant Bank of Philadelphia prays that they be decreed a prior lien on the lands involved in this suit, and that if a sale of same be had, said land sell first to pay the said Bank of Philadelphia the amount of the note held by them, including their lawful interest."

The appellants' contentions are: First, that the judgments hereinbefore referred to are void; second, that the lien of the deed of trust executed by Jones Brantley to the Citizens' Bank of Philadelphia was superior to that of the appellants' judgment, and that the Bank of Philadelphia is entitled to be subrogated thereto for the reason that it

was paid off and discharged by J. R. Brantley with money borrowed by him from the Bank of Philadelphia for that purpose, to secure which he executed and delivered to it a deed of trust; third, that although the land was not occupied by Jones Brantley as a homestead, he had the right so to do, and consequently his deed to J. R. Brantley conveyed the land free from the judgment; and, fourth, no attorney's fee should have been allowed the appellees.

1. The grounds upon which it is claimed by the appellants that the judgments are void are: First, that they are against the partnership and not the individual partners; and, second, that process was not served on Z. A. Brantley. The first of these objections is without merit, the language in which the judgments are couched being in effect the same as if it were "do have and recover of and from the defendants Z. A. Brantley and Jones Brantley, composing the late firm of Brantley Bros.," etc.

A valid judgment cannot be rendered against a defendant not served with process, and who has not appeared and submitted himself to the jurisdiction of the court, and there are decisions to the effect that a judgment by default rendered against several defendants, some of whom were not served with process, is not only invalid as to the defendants who were not served with process, but the entire judgment is void, among which are several decisions of this court.

The ground upon which these decisions proceed is that a judgment at law is an entirety, and is valid or invalid as a whole. *Weis* v. *Aaron,* 75 Miss. 138, 21 So. 763, 65 Am. St. Rep. 594. The contrary is held by many courts, and the fallacy therein was pointed out in 1 Freeman on Judgments, section 136, and 1 Black on Judgments (2 Ed.), section 211. Section 4944, Code of 1906 (Hemingway's Code, section 3220), provides that:

"A judgment or decree appealed from may be affirmed as to some of the appellants and be reversed as to others; and one of several appellants shall not be entitled to a judgment of reversal because of an error in the judgment

or decree against another, not affecting his rights in the case."

This statute clearly changed the rule in force at the time of its enactment that a judgment void as to one of several defendants is void as to all of them in cases where the error which invalidates the judgment as to the one does not affect the rights of the other defendants. The liability of the Brantleys on the cause of action on which the judgment here in question was rendered was joint and several, and the actions could have been dismissed as to Z. A. Brantley, and the causes could have then proceeded to judgment against Jones and J. R. Brantley in the first, and against Jones Brantley in the second. Sections 2682 and 2683, Code of 1906 (Hemingway's Code, sections 2169 and 2170). Consequently their rights cannot be affected by the erroneous inclusion of Z. A. Brantley in the judgments, and this court so held in *Hattiesburg Hardware Co. v. Pittsburg Steel Co.,* 115 Miss. 663, 76 So. 570. It is true that the statute applies in terms to a direct appeal to the supreme court from the judgment complained of, but it will hardly be contended that an error which cannot be availed of in a direct appeal from, can be availed of in a collateral attack on, a judgment.

In *Railroad Co. v. Scott,* 108 Miss. 871, 67 So. 491, L. R. A. 1915E, 239, Ann. Cas. 1917E, 880, the rule theretofore followed by this court that a judgment at law is an entirety and must be affirmed or reversed as a whole was repudiated, and the power of this court to affirm a judgment in part and reverse it in part was declared and has since been repeatedly exercised, the abandonment of which practice would be necessitated, should we now hold that a judgment must be dealt with as an entirety.

*Weis v. Aaron,* 75 Miss. 138, 21 So. 763, 65 Am. St. Rep. 594, *Comenitz v. Bank,* 85 Miss. 662, 38 So. 35, *Hardware & Implement Co. v. Marshall,* 117 Miss. 224, 78 So. 7, and *Boutwell v. Grayson,* 118 Miss. 80, 79 So. 61, support the appellants' contention but the contention of the appellees is supported by *Hattiesburg Hardware Co. v. Pittsburg*

*Steel Co., supra,* so that we must necessarily overrule either the first four of these decisions or the last one, and since the first four in our judgment are in conflict with, and the last is in accord with, the statute hereinbefore set forth, they will be overruled, and the last-named decision will be adhered to, from which it will follow that the judgments here in question are valid as to the defendants who were served with process; that is, the first is valid as to J. R. and Jones Brantley, and the second is valid as to Jones Brantley.

2. It will not be necessary for us to decide whether the lien of the mortgage from Jones Brantley to the Citizens' Bank of Philadelphia was superior to that of the judgment against him, for the reason that neither the original bill nor the evidence discloses any right in the Bank of Philadelphia to be subrogated thereto. One among other reasons for so holding being that it does not appear from either the original bill or the evidence that the mortgage given to the Bank of Philadelphia by J. R. Brantley was to secure the payment of money advanced by it to pay off the mortgage of the Citizens' Bank of Philadelphia. Moreover, had that fact been alleged, as was sought to be by the amendment to the bill which the court below refused to permit, and proven, it alone would not entitle the Bank of Philadelphia to be subrogated to the lien of the Citizens' Bank mortgage. In order for the Bank of Philadelphia to be subrogated to that lien, it must have discharged it under an agreement, expressly or reasonably inferable from the circumstances under which it was discharged, that the lien should be kept alive for its benefit. *Good* v. *Golden,* 73 Miss. 91, 19 So. 100, 55 Am. St. Rep. 486; *Trust Co.* v. *Peters,* 72 Miss. 1058, 18 So. 497.

3. The argument of counsel for the appellant in support of their third contention is that Jones Brantley had the right to select his homestead, and that had this execution been levied on the land while he owned it he could have moved onto the land before, and thereby prevented its sale under the execution. This is true. Nevertheless that

right did not confer upon him the further right of convey-
ing it to a third person free from the judgment lien.

4.   The only relief sought by the original bill was an
injunction the dissolution of which necessarily carried with
it the dismissal of the bill; consequently the court below
committed no error in allowing the attorney's fee incurred
by the appellees in defending the whole case.   *Jamison* v.
*Dulaney,* 74 Miss. 890, 21 So. 972; *Curphy* v. *Terrell,* 89
Miss. 624, 42 So. 235; *Mims* v. *Swindle,* 124 Miss. 686, 87
So. 151.

                                                       *Affirmed.*

ETHRIDGE, J. (dissenting).

I cannot agree with my Brethren of the court in that
part of the majority opinion in which they hold that a judg-
ment void as to one is not void as to all, because by the de-
cisions of this court almost from the beginning of the
government down to date the contrary has been held, and
it has uniformly been held that the judgment was an en-
tirety, and if void as to one is void as to all, until Divi-
sion A of this court, in *Hattiesburg Hardware Co.* v. *Pitts-
burg Steel Co.,* 115 Miss. 663, 76 So. 570, sounded the first
discordant note in the decisions of this state upon that
subject, and gave to section 4944, Code of 1906 (section
3220, Hemingway's Code), a different construction from
that placed upon that section in *Weis* v. *Aaron,* 75 Miss.
138, 21 So. 763, 65 Am. St. Rep. 594, and *Comenitz* v. *Bank
of Commerce,* 85 Miss. 662, 38 So. 35, both of which had
been decided many years before and which construction
so placed upon the above section by the said decisions had
been adopted by the legislature in the re-enactment of the
above section without change in the Code of 1906.   The
case of *Hattiesburg Hardware Co.* v. *Pittsburg Steel Co.,
supra,* did not mention these decisions at all, and one di-
vision of this court, acting alone, has no power to over-
rule a decision of the court, but before a former decision
may be overruled a majority of the whole court must con-
sent thereto.   Consequently this case was not authority

prior to its approval in the present case. Counsel in that case never challenged the decision of *Weis* v. *Aaron,* 75 Miss. 138, 21 So. 763, 65 Am. St. Rep. 594, nor that of *Comenitz* v. *Bank,* 85 Miss. 662, 38 So. 35. Neither court nor counsel mentioned those cases in any way whatever. In the cases of *Hardware Co.* v. *Marshall,* 117 Miss. 224, 78 So. 7, and *Boutwell* v. *Grayson,* 118 Miss. 80, 79 So. 61, decided subsequent to the case of *Hattiesburg Hardware Co.* v. *Pittsburg Steel Co.,* 115 Miss. 663, 76 So. 570, by Division B, counsel in neither case referred to the decision in 115 Miss. 663, 76 So. 570, nor did the court see or find that decision at the time of those decisions. In *Courtney Bros.* v. *John Deere Plow Co.,* 122 Miss. 232, 84 So. 185, an attack was made on *Comenitz* v. *Bank,* 85 Miss. 662, 38 So. 35, *supra,* and the court was urged to overrule it, but the court, then sitting *in banc,* ignored this contention, and without mentioning the subject adhered to the ruling announced in *Weis* v. *Aaron and Comenitz* v. *Bank, supra.* The result reached in that case could not have been reached by the court holding what it now holds. In *Weis* v. *Aaron,* 75 Miss. 138, 21 So. 763, 65 Am. St. Rep. 594, the contention was squarely made and ably argued that section 4378, Code of 1892, which is now section 4944, Code of 1906 (section 3220, Hemingway's Code), changed the rule as to the unity of the judgment, and the opinion of the court in that case was a construction of the statute now invoked to overturn these former decisions. This case was decided at the March, 1897, term, and *Comenitz* v. *Bank, supra,* at the November, 1904, term of this court, and with these constructions placed upon the statute by the court the legislature in 1906 re-enacted the statute, and, as I understand and will hereafter show, such construction became a part of the statute, and the court cannot rightfully change the meaning of the statute so enacted by the legislature.

There are numerous decisions of this court which hold that a judgment is an entirety, and if it is void as to one it is void as to all. These decisions began with 5 Howard (Miss.), and come down to the present time. In *Demoss*

v. *Camp,* 5 How. (Miss.) 516, it was held that a judgment taken against the sheriff of the county and the sureties on his bond, with service on the sheriff alone and judgment entered against all of them, could not be severed, but was an entirety. The court at the conclusion of the opinion said:

"The judgment is against all the defendants, and cannot be severed. It must therefore be reversed, and the cause remanded."

In *Ayer* v. *Bailey,* 5 How. (Miss.) 688, it was held that a verdict and a judgment against one of the several joint defendants who has not been served with process or entered his appearance is error for which a judgment will be reversed. The opinion in that case is short, and is herewith set out in full:

"The defendants in error brought an action of *assumpsit* in the court below against the plaintiffs in error, as the makers and indorsers of a promissory note. The process was executed upon all of the plaintiffs in error except Gorham P. Ayer, who as the sheriff returned was not to be found in the county. Carprew, one of the defendants below, appeared and filed the plea of the general issue. None of the others appeared, nor was there a default entered against them. The cause was submitted to a jury on the issue joined, who found a verdict for the plaintiffs, and upon which the court rendered a judgment against all the defendants, as well those whose who had not entered an appearance, as against Ayer on whom the process was not executed.

"This was clearly erroneous. The court had no authority to render a judgment against Ayer, who was not served with process, and had entered no appearance. In this case the only issue submitted to the jury was that which was joined on the separate plea of Carprew, and the finding of that issue for the plaintiffs was surely no authority for the judgment which was rendered against the other defendants. The plaintiffs should have entered a discontinuance as to Ayer, or taken out new process. This prop-

osition is too plain to require a reference to authority to sustain it. It has been repeatedly decided in this court, and upon the fullest authority. See *Pittman and Gwin* v. *Planters' Bank,* 1 How. Rep. 530; [*Davis* v. *Tierman*] 2 How. Rep. 786; [*Richards* v. *Walton*] 12 J. R. (N. Y.) 434."

In *Graves* v. *Williams,* 2 Smedes & M. (Miss.) 286, the court said: "There was a judgment by default taken against two of the defendants below who were not before the court, either by service of writ, or their own appearance. This has been repeatedly ruled to be error. The judgment must be reversed, and the cause remanded for further proceedings."

It will be noted that there was no affirmance as to one and reversal as to another, as would be the result if the law was then what it is now declared to be.

In *Martin* v. *Williams,* 42 Miss. 210, 97 Am. Dec. 456, it was held that a decree of the probate court for the sale of real estate by an executor or administrator is invalid, unless the record shows affirmatively a compliance with all requirements of the statute under which the land is decreed to be sold, and that a decree of the probate court is void as to some of the parties in interest because of the nonexecution of process as to them is alike void as to those who were duly and legally served with process. At page 219 of 42 Miss., at page 456 of 97 Am. Dec., the court said:

"Admitting that the lost decree in the case before us recited that process had been duly served, and publication made according to law against the nonresidents, and that it contained recitals of every fact necessary to constitute it a valid decree, it could not be sustained, unless the process issued in the case, which is part of the record, had been properly executed, or served upon all the parties to be affected by the decree"—citing *Pouns* v. *Gartman,* 29 Miss. 133; *Gelstrop* v. *Moore,* 26 Miss. 209, 59 Am. Dec. 254; *Joslin* v. *Caughlin,* 26 Miss. 134; *Currie* v. *Stewart,* 26 Miss. 648, 61 Am. Dec. 500; *Lee* v. *Gardiner,* 26 Miss. 521; *Root* v. *McFerrin,* 37 Miss. 17, 75 Am. Dec. 49.

At page 220 of 42 Miss. the court said: "In the case before us, it is manifest that a part of the defendants to the petition of Williams (filed in the court in October, 1858) were not served with process. It has been repeatedly held by this court that a judgment or decree is not binding against any of the parties to it, unless all the parties have been actually or constructively served with notice. Unless such notice is shown, the judgment or decree is a nullity."

So we see that at the time *Weis* v. *Aaron,* 75 Miss. 138, 21 So. 763, 65 Am. St. Rep. 594, was decided it was and had been the settled law of this state that a judgment was a nullity, and if void as to one was void as to all. But counsel in that case earnestly urged that this rule was changed by section 4378, Code of 1892 (which was section 1440, Code of 1880), and that it was no longer the law that a judgment was void as to one who was served with process and before the court, where a judgment had been taken against him and another jointly who had not been served with process, but that on account of this section the one served and before the court should be held to be bound by the judgment. Responding to this contention, the court (75 Miss. 140, 21 So. 763, 65 Am. St. Rep. 594) said:

"Counsel for appellee rely upon section 4378, Code of 1892 (section 1440, Code 1880), as an answer to this well-settled rule. But this rule of practice was not meant to announce that a judgment at law against several, absolutely void because one was dead when the judgment was rendered, is valid as to the living parties, and that they cannot, therefore, on appeal, show it was wholly void, being an entirety. It simply declares that one of several appellants shall not secure a reversal of the judgment as to himself, by assigning some error in the judgment valid as to him, which error does not affect his rights, which, however, constitutes reversible error as to other appellants. The statute has no application in a case where the judgment below is for any reason absolutely void as to all the defendants, but applies when the matter which would reverse it as to one may not do so as to others; such matter

being mere error in the judgment, and not going to the power of the court to render any judgment in the particular state of case. But here the error in the judgment made it void as to Basket & Aaron as well as to Upshur, and did affect the rights of Basket & Aaron. When the action of the court below results in merely reversible error as to one of the parties, the other cannot assign here that error; but, when the action of the court below is absolutely void as to all, the statute does not apply."

It will thus be seen that the court settled the construction squarely against the precise contention now made in the majority opinion.

Sections 3220, 3221, and 3222, Hemingway's Code (sections 4944-4946, Code of 1906), are precisely the same as sections 4378, 4379, and 4380, Code 1892, and were brought forward from the Code of 1880 without change, being sections 1440, 1441, and 1442 of the Code of 1880. So the statute is not a new statute warranting us to depart from the ancient rules upon this subject, but has been upon the statute books since 1880, and was construed twice before the enactment of the Code of 1906. This court in numerous decisions has announced the law to be that it would not overrule a decision construing a statute where after the decision was rendered a statute had been re-enacted by the legislature. *Shotwell* v. *Covington,* 69 Miss. 735, 12 So. 260; *Wetherbee* v. *Roots,* 72 Miss. 355, 16 So. 902; *Bank* v. *Duncan,* 56 Miss. 166; *Lombard* v. *Lombard,* 57 Miss. 171; *Davis* v. *Holberg,* 59 Miss. 362; *Madison County* v. *Brown,* 67 Miss. 684, 7 So. 516; *McLin* v. *Worden,* 99 Miss. 547, 55 So. 358; *Moss Point Lumber Co.* v. *Harrison County,* 89 Miss. 448, 42 So. 290, 873.

In the second headnote to *Shotwell* v. *Covington,* 69 Miss. 735, 12 So. 260, it is stated: "This court uniformly refuses to overrule a decision settling the construction of a statute where, after the decision, the statute has been re-enacted."

At page 738 of 69 Miss., at page 260 of 12 So., the court said: "In *Swan* v. *Gray,* 44 Miss. 393, it was decided that

the power was judicial in its character, and, therefore, not subject to revision. In view of the interest of the public in having officers elected by them inducted into office, we should have preferred that line of authorities holding the power of approving officers to be ministerial rather than judicial; but, since the decision of *Swan* v. *Gray,* our laws have undergone codification, and we find nothing in the Code of 1880 evidencing a purpose of the legislature to alter the rule announced in that case. We have uniformly declined to overrule a case settling the construction of a statute, where, after the decision, the statute has been re-enacted."

In *Wetherbee* v. *Roots,* 72 Miss. 355, 16 So. 902, in the second syllabus the rule is announced: "Where a statute which has been construed by the supreme court is on a codification of the laws, re-enacted without material change, and the same question again arises, the construction will be controlling."

At page 357 of 72 Miss., at page 902 of 16 So., Judge WOODS, delivering the opinion in this case, said: "The action of the court in refusing to permit appellant to testify was not error. The opinion of this court in *Duncan* v. *Gerdine,* 59 Miss. 550, is authority directly in point. Since that opinion was delivered, construing the statute (section 1620, Code 1880, brought forward as section 1740, Code 1892) which declares the incompetency of a witness to testify to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, a new codification of our laws has been made, and this particular statute re-enacted, without material change. The question pressed upon us by counsel with great earnestness, for other and different answer than that found in the case cited, must now be regarded as too well settled to be disturbed."

In *Bank* v. *Duncan & Marshall,* 56 Miss. 166, Judge CAMPBELL, in responding to a contention that a decision was wrong and should be changed in a case where a statute had been re-enacted, said at page 173:

"It was firmly settled by the decisions of the High Court of Errors and Appeals of this state, that banks in this state were subject to the operation of the common-law incident to the dissolution of a corporation, i. e., the extinction of all its rights and liabilities, except in so far as changed by statute. *Commercial Bank* v. *Chambers et al.,* 8 Smed. & M. 9; *Coulter et al.* v. *Robertson,* 24 Miss. 278, 57 Am. Dec. 168. And it was expressly declared that the rights of stockholders were not preserved by the act of July 26, 1843, but were left to their fate as at common law, which was to perish. *Coulter et al.* v. *Robertson,* 24 Miss. 278.

"The injustice of the common-law rule, and its 'hostility to the more enlightened spirit of the age,' were urged upon the High Court of Errors and Appeals by counsel, who insisted that it was condemned by reason and the principles of modern and enlightened jurisprudence; but the firm answer of the court was that, except as modified by statute, the common-law rule on this subject was in full force and operation in this state. We have no hesitation to declare our full concurrence with the views of counsel on this point, and our dissent from the view of the High Court of Errors and Appeals announced in the case of *Coulter et al.* v. *Robertson,* 24 Miss. 278.

"But the question is, Was it not well-settled law in this state that the consequences visited by the common law upon the dissolution of a corporation were incident to the dissolution of banks in this state, except as otherwise expressly declared by statute? The affirmative of this question is indisputable; and, although it may be the true view that the rights of creditors and stockholders of appellant did exist, in equity, after dissolution of appellant by efflux of time, we are constrained by the adjudged causes in our reports to declare that neither creditors nor stockholders of appellant had any rights, at law or in equity, after the dissolution of appellant. It was expressly declared in *Coulter et al.* v. *Robertson,* 24 Miss. 278, that the rights of stockholders were left to their fate at common law, and

that it was only by virtue of the act of 1843 that the rights of creditors did not also perish.    It is manifest that the act of 1843 has no application to appellant, because it in terms related only to banks against which any judgment or forfeiture should be rendered, and had no application to such as should be dissolved by time, without any judgment. No statute applied to them and the common law, in all its absurdity, applied to them, according to the decisions of the High Court of Errors and Appeals.

"We regard the rule, authoritatively announced by the High Court of Errors and Appeals as applicable to banks contemporary with appellant, as obligatory on us in declaring the effect of the dissolution of appellant."

In *Lombard* v. *Lombard,* 57 Miss. 171, in the second syllabus it was announced that where rights had become vested from transactions under the law, as settled by former decisions, the court should depart therefrom, only in case of clear necessity and positive conviction of error.    At page 175, 57 Miss., Chief Justice GEORGE, speaking for the court, said:

"That the former decision was made by a divided court rather increases than diminishes the duty to adhere to it, when a departure from it must result alone from my nonoccurrence in the views of my predecessor, the other two judges participating in the former judgment adhering to the opinions then formed and expressed by them.    Moreover, a majority of this court are invested by the Constitution with all the powers which can be exercised by a full bench.    This court has no distinct substantive power to declare a rule of law.    It has power to render judgments, and, as an incident to this power, may, in the exercise of it, declare a rule, which becomes a precedent for similar cases.    The power of a majority to render judgments is as ample as is that of the full bench; and necessarily the incidental power of declaring the rule which governs the case must exist also.    How much a division among the judges shall detract from the force and authority of the decision as a precedent, it is difficult to define.    That a

subsequent full bench, all concurring in the impropriety of the first ruling, would depart from it with less hesitancy in cases where a departure is allowable than they would overrule a unanimous decision, is probable. But this does not help the difficulty here; for, if the former decision be overruled, it will be by a majority only, one judge being thoroughly convinced that it is correct. And so, if a ruling by a majority is not to be regarded as settling the law, the overruling of that decision by a mere majority will leave the law in that state of doubt and uncertainty, which is worse than a concededly wrong settlement of it.

"The decision we are asked to overrule announces a rule of property; and, though but recently made, it is old enough for persons to have acted on the faith of it. Even at this early day, I should hesitate to disturb it, even if we all agreed that it was clearly erroneous. But the question involved is a very doubtful one. This is evident from the division among the judges, and the different opinions entertained by the bar. I have given it my best consideration, and I cannot say I am convinced that the former decision is erroneous. The question in its very nature presents inherent difficulties, the extracting of a certain legislative intent from repugnant provisions in a code of laws which went into operation *uno flatu,* and which was prepared for the express purpose of furnishing a body of laws for the people, containing nothing but operative provisions."

In *Davis* v. *Holberg,* 59 Miss. 362, Chief Justice CHALMERS, speaking for the court, said: "In the case of *Jackson* v. *Whitfield,* 51 Miss. 202, it was held, under section 1334 of the Code of 1871, that no appeal lay to this court in a case originating in the justice's court, unless the sum in controversy amounted to more than fifty dollars, exclusive of interest. We are by no means satisfied of the correctness of this ruling, and think that as an original question we would have held otherwise. It settled the construction, however, of a statute, which it was perhaps more important should be definitely than correctly settled, since the cases

in which the question will arise are not numerous, and there can ordinarily be but a few dollars' difference either way. Since this construction was placed upon the statute it has been re-enacted by the legislature without change of phraseology. Code 1880, section 2354. We are unwilling to disturb it."

In *Madison County* v. *Brown,* 67 Miss. 684, 7 So. 516, it was held that where a court decided upon the validity of a bond issue it would not change its decision out of deference to buyers acting on the faith of the decision in making investments in bonds. The prior decision was assailed with great vigor. Chief Justice WOODS at page 691 of 67 Miss., at page 516 of 7 So., said:

"Counsel for appellant, in argument, concedes that the controversy, in several causes determined in this court, has been, apparently, decided adversely to the views advanced by complainants; but we are pressed to enter upon a revision, or modification of the former adjudications, on the idea that the identical question now submitted to us has been passed upon recently by the supreme court of the United States, with the result of that tribunal departing or receding from its long line of decisions, beginning with *Knox County* v. *Aspinwall,* 21 Howard, 539; and we are referred to the case of *Dixon County* v. *Field,* 111 U. S. 83, and especially to *Lake County* v. *Graham,* 130 Id. 674, as supporting the views of appellant's counsel."

Then, after reviewing the decisions relied on to show the former decision wrongful including the decision of the United States supreme court, concluded as follows:

"If, however, we entertained any doubt as to the weight and value of the great current of authority on which we rest our opinion, we should feel constrained still to protect the rights of the holders of the bonds in this suit. The sound and wholesome rule of *stare decisis* becomes, under the circumstances of this case, a righteous doctrine not to be departed from. On the authority of the judgment of this court in former cases, these bonds, as we must suppose, have commended themselves to prudent persons seek-

ing safe investment. Surely, then, in the absence of all-imperious reason and authority for change, this is a pre-eminently proper case in which to say we stand by the former decisions."

In *McLin & Co.* v. *Worden*, 99 Miss. 547, 55 So. 358, the rule was again stated that where a statute has been re-enacted after being construed by the supreme court, such construction will be adhered to by that court. In that case Chief Justice MAYES, speaking for the court said:

"The *Carrier Case, supra* [87 Miss. 595, 40 So. 164], is the later holding of this court, and since the same section of the Code has been re-enacted with the later construc-tion of the court placed upon the statute, and without any change being made by the legislature, we feel that it is our duty to adhere to the case of *Carrier* v. *Poulas," supra*.

In *Hoy* v. *Hoy*, 93 Miss. 732, 48 So. 903, 25 L. R. A. (N. S.) 182, 136 Am. St. Rep. 548, 17 Ann. Cas. 1137, in the second syllabus to the L. R. A. report of this case, the rule is stated as follows: "The re-enactment of a statute of wills adopts a construction which the courts have placed upon it, that under it there may be a revocation of a will by implication."

At page 752, 93 Miss., at page 903, 48 So. at page 184, 25 L. R. A. (N. S.), [136 Am. St. Rep. 548, 17 Ann. Cas. 1137], Judge FLETCHER, speaking for the court, said:

"It is said, however, on behalf of the appellee, that the statutes of Mississippi provide a complete scheme by which wills are executed and revoked; that the law of wills and their revocation in this state is all contained in the stat-utes, and that we need not concern ourselves with the com-mon-law doctrine of implied revocations through marriage, or marriage and birth of issue; that sections 4489 and 4490 of the Annotated Code of 1892 are inconsistent with any theory of implied revocations, except such as are there mentioned and provided for. It must be admitted that the argument is forceful, and might prevail if it were a matter of first impression in this state. Certainly this view has been taken by other courts of respectable au-thority."

And then, after reviewing a number of authorities, said (page 753, 93 Miss., page 904, 48 So., page 185, 25 L. R. A. [N. S.] 136 Am. St. Rep. 548, 17 Ann. Cas. 1137) :

"But the difficulty which precludes us from adopting this simple and apparently obvious view is that, as early as 1854, the High Court of Errors and Appeals in this state plainly repudiated this contention. By comparing our present statute with section 15, c. 49, art. 1, p. 649, Hutch. Code, it will be seen that the present statute is identical with the statute in effect in 1854, and it was then said: 'It is urged by the counsel for the appellants that the common-law rule that the marriage revokes the will of a woman made before marriage is changed by the act of 1821, which provides that "no devise made," according to the statute, "or any clause thereof, shall be revocable but by the testator or testatrix canceling or obliterating the same, or causing it to be done in his or her presence, or by a subsequent will, codicil, or declaration in writing made as aforesaid." Hutch. Code, p. 649. This statute is, in substance, the same as the sixth section of Stat. 29 Car. II. But, notwithstanding that statute and others to the same effect in this country, it is well settled in England and the United States that the statute applies to acts of direct and express revocation, and that a will may be revoked by implication or inference of law by various circumstances not within the purview of the statute (*Christopher* v. *Christopher,* 2 Dick. 445; *Doe ex dem. Lancashire* v. *Lancashire,* 5 T. R. 49; *Brush* v. *Wilkins,* 4 Johns. Ch. 507), among which is included the subsequent marriage of the woman (4 Kent, Com. 527; *Osgood* v. *Breed,* 12 Mass. 526). A doctrine so firmly settled, we do not feel disposed to call in question.' *Garrett* v. *Dabney,* 27 Miss. 335. This view was clearly reannounced in the case of *Jones* v. *Moseley,* 40 Miss. 261, 90 Am. Dec. 327, where it was stated that a will would be impliedly revoked by certain changes in the condition of the testator. So, in view of the fact that our present statute has been five times re-enacted without change since the decision in *Garrett* v. *Dabney,* we cannot

see our way clear to disregard the holding in that case, sanctioned as it is by the lapse of time and the numerous readoptions of the statute so construed. We must recognize the doctrine that implied revocations are still possible in spite of the statute."

In *Moss Point Lumber Co.* v. *Harrison County,* 89 Miss. 448, 42 So. 290, 873, the rule for dealing with former decisions and overruling them is stated as follows in the sixteenth headnote:

"Where a question has been settled by the supreme court, it should be treated as no longer open for review, unless the evil resulting from the principle established be manifest and mischievous."

At page 530 of 89 Miss., at page 302 of 42 So., Judge MAYES. speaking for the court, said: "A decision contrary to our holding would involve the necessity of overruling this decision decided a little over four years ago. When a question has been settled by this court, it should be treated as no longer open for review and investigation, unless the evil resulting from the principle established by it is manifest and mischievous."

Not only has the statute as construed in *Weis* v. *Aaron,* 75 Miss. 138, 21 So. 763, 65 Am. St. Rep. 594, *supra,* been re-enacted by the legislature with that construction placed upon it, but the decisions in *Weis* v. *Aaron, supra,* and in *Comenitz* v. *Bank,* 85 Miss. 662, 38 So. 35, *supra,* constitute a rule of property, and it is well settled in the jurisprudence of this state and other states that a decision constituting a rule of property ought not to be overruled. *Weis* v. *Aaron, supra,* has been the law for twenty-five years, and there is no telling the extent of dealing with property affected by judgments since that time. A valid judgment constitutes a lien upon property. A void judgment does not constitute a lien upon property. It may be in the present case that the dealings with reference to the property, the buying and selling thereof, and giving mortgages thereon, was all done on the faith that the judgment was void.

Notwithstanding the criticism of Mr. Black upon the unit theory of the judgment, I fail to see the unsoundness of the theory that a judgment is an indivisible something. It is familiar learning that the right of action involved in the suit is merged in the judgment. A party pursuing another to judgment can easily determine who are proper parties before the court and who have been legally served. with process. No hardship results from forcing him to a diligent inquiry and a strict rule in that regard. It is probable that in many cases a party fails to exercise his right of appeal on the faith of having a cojudgment defendant to share the liability with him. He has a right to rely upon the judgment in case he satisfies it to force contribution from his fellow defendant. I am not a believer in disturbing the settled law of the state. Where a law needs to be changed the legislature is the proper body to make the change. It can only act prospectively and make a rule for the future what it ought to be in its judgment. A change of rule by the legislature does not disturb vested rights, whereas a change by the court unsettles the law, disturbs confidence, and unsettles business, to a certain extent. The wholesale slaughter of precedents brought about in this case alarms me. It looks too much like judicial running amuck for a mild-mannered judge like me. I do not believe in destroying a whole flock of mature judicial decisions to save one gosling, who may not survive the next change in judicial weather.